Mary BRUK

v.

**TOWN OF GEORGETOWN and Town of Georgetown Planning Board.[1]**

Supreme Judicial Court of Maine.

Argued Sept. 23, 1981.

Decided Nov. 4, 1981.

1. The caption reflects our deletion of the six named individual members of the Town of Georgetown Planning Board as parties defendant to this case. No claim is made against those persons as individuals. The defendant, the Town of Georgetown, was added as a party defendant by motion filed after pre-trial conference and alleging that it had been agreed at pre-trial conference to include the Town of Georgetown as a party defendant. This motion having been granted by the court and being in accord with the wishes of the parties will be accepted for the purpose of this litigation as a proper joinder of the Town as a defendant. We also take this opportunity to point out, once again, "the hoary validity of the practice in Maine of designating a town, when a party to a civil action, as the 'inhabitants of' that town." *Inhabitants of the Town of Boothbay Harbor v. Russell*, Me., 410 A.2d 554, 557 n. 3 (1980). In the context of this case, we treat this as a non-substantive misnomer.

Locke, Campbell & Chapman, Frank G. Chapman (orally), Augusta, for plaintiff.

Richard W. Smith (orally), Bath, for defendants.

Before McKUSICK, C. J., and GODFREY, NICHOLS, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ.

PER CURIAM.

The defendants appeal from a judgment entered in Superior Court (Sagadahoc County). The Superior Court sustained plaintiff's appeal from a denial of subdivision approval and ordered the Town of Georgetown Planning Board (hereinafter the "Planning Board") to issue a conditional subdivision approval to the plaintiff. We sustain defendants appeal and reverse the judgment entered below.

*Procedural History and Facts*

In 1976 the plaintiff Mary Bruk filed an application for approval of plans for a subdivision in the Town of Georgetown to be known as Harmon's Harbor Development. The plans envisioned the subdivision of a thirty acre parcel of land into twenty-six separate parcels for seasonal residences. A similar application was filed with the State of Maine Department of Environmental Protection and following plaintiff's receipt of conditional approval from that department a hearing was held before the Planning Board on December 12, 1978. The hearing was conducted pursuant to 30 M.R. S.A. § 4956 (1978), and since the Town of Georgetown had not enacted its own subdivision ordinance, it applied the criteria specified in Paragraph 3 of the statute.[2] The

2. 30 M.R.S.A. § 4956(3) provides:

"*3. Guidelines.* When promulgating any subdivision regulations and when reviewing any subdivision for approval, the planning board, agency or office, or the municipal officers, shall consider the following criteria and before granting approval shall determine that the proposed subdivision:

"*A.* Will not result in undue water or air pollution. In making this determination it shall at least consider: The elevation of land above sea level and its relation to the flood plains, the nature of soils and subsoils and their ability to adequately support waste disposal; the slope of the land and its effect on effluents; the availability of streams for disposal of effluents; and the applicable state and local health and water resources regulations;

"*B.* Has sufficient water available for the reasonably foreseeable needs of the subdivision;

"*C.* Will not cause an unreasonable burden on an existing water supply, if one is to be utilized;

"*D.* Will not cause unreasonable soil erosion or reduction in the capacity of the land to hold water so that a dangerous or unhealthy condition may result;

"*E.* Will not cause unreasonable highway or public road congestion or unsafe conditions with respect to use of the highways or public roads existing or proposed;

"*F.* Will provide for adequate sewage waste disposal;

"*G.* Will not cause an unreasonable burden on the ability of a municipality to dispose of solid waste and sewage, if municipal services are to be utilized;

"*H.* Repealed. 1973, c. 465, § 3.

Planning Board denied plaintiff's application for approval finding that plaintiff had failed to establish that the proposed subdivision met the criteria concerning water supply and distribution, soil erosion, traffic safety, solid waste disposal, maintenance of the area's beauty, and plaintiff's financial and technical capacity to carry out the project. Additionally, the Planning Board found that plaintiff's plan was not adequate to protect and preserve the public health, safety and general welfare. Plaintiff appealed the Planning Board denial to Superior Court pursuant to M.R.Civ.P. 80B.[3] The Superior Court at the request of the parties referred the matter to a referee who, after a non-evidentiary hearing, rendered a report recommending judgment for the plaintiff. The Superior Court accepted the report over objections by the defendants and entered the judgment which is the subject of this appeal.

## I.

The use of a referee in the appeal process in Superior Court requires consideration and comment even though it does not bear directly upon the issues presented. This case was initiated in the Superior Court by complaint seeking judicial review pursuant to M.R.Civ.P. 80B upon the record of proceedings before the Planning Board with no evidentiary hearing required. While M.R.Civ.P. 53(b)(1) provides that

"*I.* Will not have an undue adverse effect on the scenic or natural beauty of the area, aesthetics, historic sites or rare and irreplaceable natural areas;

"*J.* Is in conformance with a duly adopted subdivision regulation or ordinance, comprehensive plan, development plan, or land use plan, if any; and

"*K.* The subdivider has adequate financial and technical capacity to meet the above stated standards.

"*L.* Whenever situated, in whole or in part, within 250 feet of any pond, lake, river or tidal waters, will not adversely affect the quality of such body of water or unreasonably affect the shoreline of such body of water."

3. The Town of Georgetown has no zoning regulations generally, and thus has no zoning board of appeals. Although we have rejected direct judicial review of initial decisions of a Planning

"[t]he court may appoint a referee in all cases where the parties agree ...", it does not necessarily follow that the court should do so.[4] Reference of cases is a valuable procedure which enables the judiciary to meet an ever-expanding case load. It has been used efficiently and effectively in jury-waived civil cases involving complex and time-consuming factual presentation and application of the law to the developed facts. Reference relieves justices of the Superior Court from the necessity of conducting the trial and requires only that they consider the acceptance or rejection of the referee's report and the entry of judgment. Recognizing that the use of referees in appropriate circumstances contributes substantially to the efficient and orderly management of the civil case docket, we nevertheless point out for the Bench and Bar that the use of a referee in this case was inappropriate. Judicial review of an administrative decision is ordinarily limited to an examination of the record of proceedings below. The Superior Court is called upon to determine whether the factual findings are appropriately supported by evidence and whether the law was correctly applied. The use of a referee in such cases contributes neither to efficiency nor expedition, and the Superior Court justice is not relieved of any function. The referee conducts a record review. When called upon to accept, reject, or rule upon objections to the

Board insofar as they relate to zoning, *see Fletcher v. Feeney*, Me., 400 A.2d 1084 (1979) and *Benjamin v. Houle*, Me., 431 A.2d 48 (1981), the application of the subdivision ordinance is not zoning and, therefore, those cases are not applicable. Direct judicial review is appropriate in this case pursuant to M.R.Civ.P. 80B.

4. Field, McKusick and Wroth state that the court in each case must make an *ad hoc* decision on the appropriateness of the case for reference. 1 Field, McKusick and Wroth, *Maine Civil Practice* § 53.1, at 698 (1970). Although the Reporter's Notes on Rule 53(b)(1) indicate that the reference of equity cases has traditionally been considered inappropriate and not permitted, the authors indicate that even such time honored distinctions should not bind the court in its *ad hoc* determinations.

referees report, the presiding justice must conduct an identical review.

■ A motion for reference, even if the parties agree and assume the necessary costs, as was the case here, should be allowed by the presiding justice only if that procedure furthers the efficient and orderly handling of that particular case.

## II.

The issue before the referee, the Superior Court and now this Court, remains the same. Is the decision of the Planning Board denying approval for the proposed subdivision based upon an erroneous interpretation of the law or based upon conclusions of fact which have no substantial evidence in support thereof considering the

record as a whole? *See, Frank v. Assessors of Skowhegan*, Me., 329 A.2d 167 (1974). The Superior Court accepted the recommendation of the referee and concluded that the findings of the Planning Board were not supported by substantial evidence. We disagree.

The Planning Board conducted a hearing and received evidence from an engineer, a soil scientist, a well-driller and an attorney, all acting on behalf of the applicant. In addition, evidence was received from representatives of other agencies and certain residents of the Town of Georgetown. Having heard and considered the evidence, the Planning Board made detailed findings in support of its denial of the application.[5]

---

5. The Planning Board's findings in pertinent part were:

"In particular, with respect to 30 M.R.S.A. section 4956(B), the Developer did not submit data or evidence of the experience of other wells in the immediate vicinity, as opposed to the general vicinity, of the development site; did not provide adequate information for the Board to determine which of several methods for calculating the proper capacity for a proposed central well system was correct; and, did not provide sufficient evidence for the Board to determine the sufficiency or adequacy of a distribution system from the central well to the individual lots. Without this information the Board cannot determine whether 26 individual wells on the proposed site coupled with one central well and distribution system would provide sufficient water for the reasonably foreseeable needs of 26 residences.

"With respect to Title 30 M.R.S.A. Section 4956(3)(D), the developer did not provide information to the Board on the propensity of the present site toward soil erosion or the capacity of the land to hold water in its present condition; did not provide the Board with information regarding the amount of presently existing natural vegetation which will be or might be disturbed by development of the subdivision or by additional improvement to each lot in the subdivision which might be made by its individual owner or purchaser; and, therefore, did not convince the Board that the additional volume of water from the septic system to be installed in the subdivision would not unreasonably reduce the capacity of the land to hold water, or would not cause unreasonable soil erosion. Nor, did the Developer present evidence which would allow the Board to determine whether or not the proposed roads and driveways would unreasonably burden the soil.

"With respect to Title 30 M.R.S.A. Section 4956 3(E), the Applicant presented evidence of sight distances on both existing and proposed roads but did not demonstrate to the Board how the sight distances along the proposed road would be assured or how they were calculated for the proposed road. In addition, the Developer's evidence with respect to sight distances on existing roads was at variance with other testimony on the sight distances and hazardous nature of the roadways which other evidence the Board found more credible. Further, the Applicant did not present any evidence with respect to the sight distances which would allow the Board to determine what speeds would be safe for traffic on the existing and proposed roads; nor, did the Developer adequately explain the method by which the sight distances were measured for the Board to determine that adequate safety was assured. No evidence was presented on the likely amount of traffic to which the road would be exposed and no information was given with regard to existing traffic on the existing roads. For all of these reasons the Board is unable to determine that the subdivision will not cause unreasonable public road congestion or unsafe conditions with respect to the use of the highways or public roads existing or proposed.

"With respect to Title 30 M.R.S.A. Section 4956 3(G), evidence presented at the hearing indicated that the Georgetown dump is operating at the very edge of its capacity at this time and is only able to function if allowed to continue operating as a burning dump. It is the finding of the Board that an additional 26 families would place an unreasonable burden on this already marginal dump operation and would increase the likelihood that the Town would not qualify under state guidelines which allow open burning. Therefore, the Developer did not demonstrate that the subdivision will

Initially it should be noted that when a Planning Board denies approval, as in this case, the reviewing court is called upon to determine whether the negative conclusion is supported by substantial evidence on the record as a whole. While this may occasion some confusion when first confronted, it does not alter the scope or function of judicial review. 30 M.R.S.A. § 4956(1) casts upon the applicant the burden of proving that the proposed subdivision satisfies the statutory criteria. If the Planning Board concludes that the project does not satisfy any one or more of the criteria, and finds against the moving party, then the reviewing court must determine whether the record contains "such relevant evidence as a reasonable mind might accept as adequate to support . . . [that] conclusion." *In re Maine Clean Fuels, Inc.,* Me., 310 A.2d 736, 741 (1973). While the standard of review employed in connection with findings made against the moving party could be described as a "clearly erroneous standard", it is settled law that such phraseology is synonymous with "supported by 'substantial evidence on the whole record'." *See Sanford Highway Unit of Local 481, Council No. 74, American Federation of State, County and Municipal Employees, AFL–CIO v. Town of Sanford,* Me., 411 A.2d 1010, 1014 (1980).

The Referee and the Superior Court below did not employ the standard of review described above, but rather adopted a procedural device to shift the burden of proof onto the Town once a prima facie case had been established by the applicant. The authority for the use of this device is found in Delogu, The Misuse of Land Control Powers Must End: Suggestions for Legislative and Judicial Responses, 32 Me.L.Rev. 29 (1980). This Court is cognizant of the need to protect against arbitrary decisions of local boards. If a case arises in which it is shown that a planning board is an instrument of exclusion, this Court may have an opportunity to consider the employment of the procedural devices suggested; however, this is not such a case. The court below erred in failing to conduct its review in accord with the "substantial evidence rule."

### III.

A review of the findings made by the Planning Board in this case and a review of the entire record reveals that with respect to certain of the negative findings there is relevant evidence in the record to support adequately the conclusions reached. With regard to the water supply the findings of the Planning Board refer to the

not cause an unreasonable burden on the ability of the Town to dispose of solid waste.

"With respect to Title 30 M.R.S.A. Section 4956 3(1), credible testimony was presented at the hearing indicating that this Section of Harmon's Harbor in Five Islands was a rare natural area not only in the context of Five Islands and in the context of the Town of Georgetown, but also in view of the recent rapid loss of this type of natural area throughout the region. It is the opinion of the Board that although lots of the size proposed by the subdivider are allowed under the Town's Shoreland Zoning Ordinance, that the density of this project is inconsistent with the preservation of the special character of the Harmon's Harbor area, especially in light of the number of homes which would be constructed in close proximity to the Harmon's Harbor shorefront. We are therefore not convinced that the proposed subdivision will not have an undue adverse effect on the scenic or natural beauty of the area, aesthetics or rare and irreplaceable natural areas.

"With respect to Title 30 M.R.S.A. Section 4956 3(K), the evidence submitted at the hear-

ing was incomplete with respect to the development costs associated with the project and the largest single development item, the roads, carried a 1974 estimate of $30,000. The Board has received a letter from Depositor's Trust Company indicating that up to $50,000 would be available for developmental purposes for this project. No evidence was given of the Applicant's access to other funds. Because of the large amount of time that has elapsed since the estimate was obtained for the road work and since we do not know whether the road work estimate included the re-grading required by the new road slopes shown on the plan, and since there was no evidence of the survey, engineering or legal costs, we are not able to determine that the subdivider has adequate financial capacity to assure safe road or highway conditions or to assure reasonable water supply. In addition, we are unable to determine whether or not the Developer has an adequate technical capacity to meet the standards required elsewhere in Section 4956(3) because of the inadequacies in the information presented on several of the required items."

failure to provide information which would permit a determination of the adequacy of the plan. The plaintiff presented a well driller who testified that a well could be dug on each lot and he expected an adequate supply of water could be obtained by drilling from 150 to 250 feet in depth. No specific information was provided concerning wells in the immediate area and no other data was provided to support that assertion. The plaintiff presented an engineer who stated that a central well would be dug and tested prior to the sale of any lots and would be available to any or all of the lots which did not yield a satisfactory well. The method of distribution from the central well was not defined in the plans and was to be the responsibility of the individual lot owners. The plaintiff assumed that distribution lines would be above ground because the development was expected to consist of seasonal dwellings. However, it was conceded that once a sale occurred there was no assurance that seasonal use alone would result. When the foregoing presentation of evidence is considered, together with the absence of any data regarding the performance of other wells in the immediate vicinity and the absence of any plans for distribution from the central well, we cannot say that a reasonable mind could not accept that evidence as adequate to support the conclusion drawn by the Planning Board.

Since it is the plaintiff's obligation to satisfy each of the criteria, it is not necessary to consider each separate finding. No useful purpose would be served by recounting an analysis of each finding. It is sufficient to note that the evidence reflects that with regard to solid waste disposal no plan was presented except the use of the town dump which was described as marginal and possibly operating only at the sufferance of the enforcement authorities. With regard to soil suitability, maps prepared by the Soil Conservation Commission were received in evidence which described the area as poor to very poor for location of septic sewage systems, pipe and sewer lines, houses with foundations, cottages without foundations, and roads. Plaintiff's engineer acknowledged the entire Town of Georgetown is unsuitable for building. Whether that admission was meant to be taken literally is not clear. However, it does highlight the fact that the proposed development is situated in a fragile, and less than ideal area. This Court finds that the Planning Board's denial of plaintiff's application is supported by substantial evidence on the record as a whole.

The entry is:

Appeal sustained.

Judgment for defendants.

All concurring.