**J. George DRISCOLL, et al.**

v.

**Russi K. GHEEWALLA, et al.[1]**

Supreme Judicial Court of Maine.

Argued Jan. 4, 1982.

Decided March 3, 1982.

---

1. The caption reflects our deletion of the City of Saco, an original party defendant in the action. Motion to dismiss as to the City of Saco was granted on November 24, 1980.

Verrill & Dana, Andrew M. Horton (orally), Portland, for plaintiff.

Smith & Elliott, P. A., Karen B. Lovell (orally), Roger S. Elliott, Saco, for Gheewalla, et al.

Ronald E. Ayotte, Sr., Caron, Ayotte & Caron, Saco, for City of Saco.

Before McKUSICK, C. J., GODFREY, ROBERTS, VIOLETTE and WATHEN, JJ., and DUFRESNE, A. R. J.

DUFRESNE, Active Retired Justice.

The appellants, Russi K. and Edith Gheewalla, took the instant appeal from an order of summary judgment in the Superior Court, York County, vacating a decision by the Zoning Board of Appeals of Saco (Board) granting the appellants a zoning variance. We reverse the summary judgment and order the zoning variance reinstated.

The Gheewallas own an undersized lot on the corner of Spring and Surf, unaccepted streets in the City of Saco, abutting property owned by the appellees, J. George and Nancy Driscoll. Hoping to build a house on this lot for their own personal use, the appellants petitioned the Board for a variance from the setback requirements of the local zoning ordinance. Because of the lot's location on a corner and the need for a sizable on-site sewer system, strict enforcement of these requirements would reduce the buildable portion of the lot to a rectangular area seventeen feet wide by twenty feet long, *i.e.* less than seven percent of the total lot. On August 19, 1980, the Board, after a public hearing thereon, denied the appellants' first application for a variance which requested that the setbacks from the streets be reduced from twenty-five to ten feet and that the setback from one of the interior property lines, the one on the Vachon side and not on the Driscoll side, be cut from fifteen to ten feet. At a second hearing less than one month later, the Board, on September 11, 1980, approved the appellants' modified plan, which called for a setback from Spring Street of fifteen feet, from Surf Street of twenty-two feet, and from the same interior property line of ten feet.

The Driscolls appealed the Board's decision to the Superior Court pursuant to M.R. Civ.P. 80B. The justice below vacated the Board's grant of the variance on the grounds that the appellants' second hearing was barred by a provision in Saco's zoning ordinance forbidding rehearing of a denied appeal for two years[2] and the appellants had failed to meet the statutory requisite of showing that a strict application of the ordinance would result in "undue hardship."

---

2. Section 804-2 of the zoning ordinance of the City of Saco provides:

An appeal for a variance or an exception or from an appeal to set aside the decision of the Building Inspector, once heard by the Appeals Board and denied shall not be heard again by the Appeals Board unless 2 years have passed since the last hearing on the matter, or unless amendment has been made to the Zoning Ordinance which changes the status, circumstances or conditions of the matter which was appealed.

### Preliminary considerations

■ Initially, we note that the Superior Court justice, in deciding the motions for summary judgment, did not take or receive any additional evidence, but made his decision entirely from the record developed at the zoning-board-of-appeals level, the proffered affidavits in support of the appellants' motion presenting no facts material to the two issues considered by the court. Where, on appeal from an administrative agency's decision such as, in this case, from the grant of a variance by the zoning board of appeals, the intermediate appellate tribunal such as the Superior Court here receives no other evidence in addition to the evidence presented to the Board, the Law Court will not review the Superior Court's decision as such, but will directly examine the record developed before the Board, the same as the Superior Court did. In such circumstances, the standard of review is the same in the Law Court as it was before the Superior Court, whether the Board abused its discretion, committed an error of law, or made findings not supported by substantial evidence in the record. *Mullen v. City of Kansas City*, 557 S.W.2d 652 (Mo.App.1977); *Beckmeyer v. Beuc*, 367 S.W.2d 9, 11 (Mo. App.1963); *Appeal of Buckingham Developers, Inc.*, Pa.Cmwlth., 433 A.2d 931, 933 (1981). *See Forer v. Quincy Mutual Fire Insurance Company*, Me., 295 A.2d 247 (1972).[3] This standard of review, whether phrased in terms of abuse of discretion, clear error or substantial evidentiary support on the whole record, presents a single formula of uniconcept in appellate procedure. *See Bruk v. Town of Georgetown*, Me., 436 A.2d 894, 898 (1981).

■ We further recognize that an appellate court, in reviewing zoning board action, is not free to make findings of fact independent of those explicitly or implicitly found by the municipal zoning authority. It may not substitute its judgment for that of the municipal body, but is limited to determining whether from the evidence of record facts could reasonably have been found by the zoning body to justify its decision. *See Golden v. City of Overland Park*, Kan., 584 P.2d 130, 135 (1978); *Pappas v. City of Manchester Zoning Board*, 117 N.H. 622, 376 A.2d 885, 886 (1977). *See also Muse v. Zoning Hearing Board*, 52 Pa.Cmwlth. 287, 415 A.2d 1255, 1257 (1980).

■ Thus, in reviewing the Board's approval of a variance in this case, the Superior Court as the initial appellate forum and the Law Court as the ultimate appellate court must affirm the decision of the administrative agency, unless that decision was unlawful, arbitrary, capricious or unreasonable respecting the issues litigated before the municipal body. *Lippoth v. Zoning Board of Appeals, City of So. Portland*, Me., 311 A.2d 552, 557 (1973). Both issues, (1) the lawfulness of a second application within the ordinance's two-year ban and (2) proof of undue hardship if the variance be denied, were fully contested before the zoning board of appeals.

■ True, 30 M.R.S.A. § 2411(3)(E) provides in pertinent part that

[a]ll decisions [of Boards of Appeals] shall become a part of the record and *shall include a statement of findings* and conclusions, as well as the reasons or basis therefor, upon all the material issues of fact, law or discretion presented and the appropriate order, relief or denial thereof. (Emphasis added).

We deplore the fact that the Board in this case did not expressly articulate *all* the basic facts supporting its decision. However, there was no request for specific findings of facts and in the circumstance of this record the necessary implicit findings to sustain the Board's decision fully appear. Although disclosure of specific findings of fact by a zoning board of appeals will facilitate judicial review and implement statuto-

---

3. Accord: In the area of appeals from Planning Board action, see *Bruk v. Town of Georgetown*, Me., 436 A.2d 894, 897 (1981); in a child custody case, *Ziehm v. Ziehm*, Me., 433 A.2d 725, 730 (1981); in juvenile "criminal" justice proceedings, *State v. Roy E. S.*, Me., 440 A.2d 1025 (1982); *State v. Joey F.*, Me., 438 A.2d 1273 (1982); *State v. Michael Z.*, Me., 427 A.2d 476, 477 (1981); *State v. Ann Marie C.*, Me., 407 A.2d 715, 721 (1979).

ry directions, the absence of findings, at least where there is no request therefor, will not in and of itself constitute reversible error, especially in a case where the board's decision is supportable on the basis of an implicit finding that the several requisites for a variance had been met. *See Pappas v. City of Manchester Zoning Board, supra,* 376 A.2d at 886, 887.

### Rehearing within one month of an earlier denial

As indicated previously (footnote 2), the zoning ordinance of the City of Saco provides that an appeal for a variance, once heard by the Board and denied, *shall not be heard again* by the Appeals Board unless 2 years have passed since the last hearing on the matter. The Superior Court interpreted the ordinance literally on that score and held that the Gheewallas should not have been afforded a second hearing in the matter. In this, there was error.

■ The construction of zoning ordinances is a question of law for the court. *Singal v. City of Bangor and Nite Owl, Inc.,* Me., 440 A.2d 1048 at 1051 (1982).

■ Even in the absence of an express prohibition in a zoning ordinance, the general rule is that a board of zoning appeals or board of adjustment may not entertain a second application for a variance concerning the same property after a previous application has been denied, unless a substantial change of conditions had occurred or other considerations materially affecting the merit of the subject matter had intervened between the time of the first adjudication and the subsequent application. *See Fiorilla v. Zoning Board of Appeals,* 144 Conn. 275, 278–79, 129 A.2d 619, 621 (1957); *Russell v. Board of Adjustment of Borough of Tenafly,* 31 N.J. 58, 155 A.2d 83, 88 (1959); *Fisher v. City of Dover,* 412 A.2d 1024, 1027 (N.H.1980). Thus, this principle applies only when the subsequent application for a variance seeks substantially the same relief as that sought in the previous one. And it is for the administrative agency, in the first instance, to decide whether the requested relief in both applications is substantially

the same. Its determination will be disturbed only if its discretion was abused. *Fiorilla v. Zoning Board of Appeals, supra,* 129 A.2d at 621.

The reasons underlying the rule consist in providing finality to proceedings before the appellate zoning authority, giving protection to the integrity of the zoning plan, immunizing board decisions from change at the whim of agency personnel and shielding its members from possible improper influences, and, finally, stabilizing property interests and sparing property owners the harassment which repetitive variance requests would undoubtedly generate. *See Fiorilla v. Zoning Board of Appeals, supra; Fisher v. City of Dover, supra; In re Crescent Beach Association,* 126 Vt. 140, 224 A.2d 915 (1966).

■ Should the ordinance's prohibition against a rehearing or subsequent application for the period of two years from a previous denial of a request for a variance on the same property be interpreted to bar absolutely for that period of time *any* request for a variance notwithstanding the existence of substantial changes in the use to be made under the later proposal from that advanced in the previous hearing, then a serious question respecting the constitutionality of that part of the ordinance would arise because of substantial deprivation of property without compensation or abuse of the police power. While herein it is not necessary to pass upon the constitutionality of this zoning ordinance as interpreted by the Superior Court, yet in construing an ordinance, as in the case of the construction of statutes, if the ordinance is susceptible of either of two interpretations, we should adopt the interpretation which would tend to sustain its constitutionality. *See Warren v. Municipal Officers of Town of Gorham,* Me., 431 A.2d 624, 630 (1981); *Inhabitants, Town of Boothbay v. National Advertising Company,* Me., 347 A.2d 419, 422–23 (1975); *In re Stubbs,* 141 Me. 143, 39 A.2d 853, 156 A.L.R. 400 (1944); *Donahue v. City of Portland,* 137 Me. 83, 15 A.2d 287 (1940); *State v. Brown,* 119 Me. 455, 111 A. 760 (1920). Therefore, we construe the or-

dinance to mean that a subsequent application for a variance will be barred within the two-year period from a previous denial if it seeks substantially the same relief as that sought in the previous one, but that, if the new proposal is materially different from that of the prior variance request, then the general rule will apply and the board of zoning appeals or adjustment has the power to entertain the request and adjudicate the matter under the changed circumstances, notwithstanding the seemingly absolute facial time-bar of the ordinance.

In *Peterson v. City Council for City of Lake Oswego*, 32 Or.App. 181, 574 P.2d 326 (1978), the court held that an ordinance prohibiting the resubmission of an application for a zoning variance within six months from the date of a previous denial did not bar consideration of the new application, where the new plan contained significant changes in setbacks and in the dimensions of the proposed building.[4]

■ In the instant case, the Zoning Board of Appeals implicitly found that the new proposal substantially differed from the previous planned construction in that the building would be set back from Surf Street twenty-two (22) feet instead of ten (10) feet as previously requested and from Spring Street fifteen (15) feet instead of ten (10) feet; also, the building itself was reduced to reasonable limits from what the Board had previously considered excessive use of space not contributing to living accommodation, in that the deck on the front had been eliminated, five (5) feet had been cut from the width of the house and the back porch had been shortened by two (2) feet. We cannot say that the Zoning Board of Appeals was clearly wrong and abused its discretion in finding that the new building proposal on this undersized lot was substantially different from the one previously

submitted and turned down. The objectionable features of the old plan had been removed and the Board had full authority to entertain the new application, notwithstanding the two-year prohibition of the ordinance.

### Undue Hardship

The Superior Court reversed the decision of the Zoning Board of Appeals granting the Gheewallas the variance requested on the additional ground that they had failed to establish the requisite "undue hardship" which would entitle them to a variance. Again, this was error.

The statutory provisions regulating municipal planning, zoning and development (chapter 239) mandate the following restrictions respecting zoning adjustments:

30 M.R.S.A. § 4963

. . . . .

*2. Powers.* In deciding any appeal:

. . . . .

*C.* The board [zoning board of appeals] may grant a variance in strict compliance with subsection 3.

*3. Variance.* A variance may be granted by the board only where strict application of the ordinance, or a provision thereof, to the petitioner and his property would cause undue hardship. The words "undue hardship" as used in this subsection mean:

*A.* That the land in question cannot yield a reasonable return unless a variance is granted;

*B.* That the need for a variance is due to the unique circumstances of the property and not to the general conditions in the neighborhood;

*C.* That the granting of a variance will not alter the essential character of the locality; and

---

4. For the decision of this case, we need not determine whether, after the expiration of the two-year prohibition of the ordinance, an owner would have the absolute right to have the board of zoning appeals consider his renewed application for a variance for substantially the same relief as had been denied to him previously, or whether the principle of material change

would still apply to bar a variance under circumstances which did not present a substantial change in the proposal. *But see Whittle v. Board of Zoning Appeals*, 211 Md. 36, 125 A.2d 41, 45–46 (1956), quoting from *Mayor and City Council of Baltimore v. Linthicum*, 170 Md. 245, 249, 183 A. 531, 533 (1936).

*D.* That the hardship is not the result of action taken by the applicant or a prior owner.

A municipality may, in a zoning ordinance, adopt additional limitations on the granting of a variance, including, but not limited to, a provision that a variance may only be granted for a use permitted in a particular zone.

 In reviewing the Board's action on the record made before the zoning board of appeals, the Superior Court was bound, as is this Court, to affirm the agency decision unless the Board's grant of the variance was unlawful, arbitrary, capricious or unreasonable. The judiciary in its appellate capacity has no right to substitute its own judgment on the facts for that of the appeals board. *Lippoth v. Zoning Bd. of App., City of So. Portland,* Me., 311 A.2d 552, 557 (1973). The burden was on the applicant for a variance, here the Gheewallas, to prove by competent evidence at the agency level that all the statutory prerequisites, which gave authority to the Board to grant the relief requested, had been met. *Lovely v. Zoning Bd. of App. of City of Presque Isle,* Me., 259 A.2d 666 (1969).

Taking the statutorily mandated requirements in reverse order of their previous listing, we first note that the economic hardship underlying the appellants' request for relief was not self-inflicted, as the evidence disclosed, and, there is no contention to the contrary, that neither the appellants nor their predecessors in title caused the problems necessitating a variance. *See Ramondo v. Zoning Hearing Bd.,* Pa.Cmwlth., 434 A.2d 204 (1981).

Also, there was competent evidence before the Board, and the members thereof would be very much aware of that fact due to their own familiarity with the neighborhood, to the effect that the granting of the variance would not alter the essential character of the locality. Indeed, other houses in the immediate area are already as close to the street as the proposed home for the appellants. The Board's express finding on that point is fully supported in this record. It is difficult to imagine how in this case the variance could bring any inharmonious element to the essential character of the locality. The Board could have found that, rather than have an adverse effect, a variance would create a more compatible setting in the development. *See Marlowe v. Zoning Hearing Bd. of Haverford,* 52 Pa. Cmwlth. 224, 415 A.2d 946 (1980).

The Board, furthermore, could reasonably have concluded from the evidence before it that the "unique circumstances" requirement of undue hardship had been met because of the need for a large on-site sewer system, the lot's small size, and its location on a corner, which meant that without a variance the property was subjected to two twenty-five-foot setbacks rather than one.

This leaves for review the last requirement of the statutorily mandated undue hardship, whether there was competent evidence in this record that the land in question, absent the grant of a variance, could not yield a reasonable economic return.

We are not dealing, as in *Barnard v. Zoning Bd. of App. of Town of Yarmouth,* Me., 313 A.2d 741 (1974), with the situation where the request for a variance was based on an attempt to maximize the actual or potential economic return from the property in derogation of a duly enacted and legitimate zoning restriction. In the instant case, it clearly appears that a literal adherence to the relevant zoning setback restrictions of the ordinance, which would limit the size of the proposed home to seventeen (17) feet by twenty (20) feet, would deprive the appellants of a reasonable return and, in the absence of the variance granted by the Board, would result in the practical loss of all beneficial use of the land.

 It is true that the Board did not make an express finding to the effect that a rigid enforcement of the ordinance's setback restrictions would prevent the land in question from yielding a reasonable economic return to its owners; nevertheless, the evidence in this record implicitly supports such a finding. Regularity of administrative action is presumed. All legal in-

tendments are in its favor. Agency decisions will be assumed to have been taken with full knowledge of material facts and in justification thereof.[5] *Central Me. Power Co. v. Waterville Urban Ren'l Auth.*, Me., 281 A.2d 233, 242 (1971); *Milwaukie Co. of Jehovah's Witnesses v. Mullen*, 214 Or. 281, 330 P.2d 5, 10–11, 74 A.L.R.2d 347 (1958), cert. denied 359 U.S. 436, 79 S.Ct. 940, 3 L.Ed.2d 932 (1959).

The Board, composed as it is of local people possessed of experience and expertise in the field of zoning and knowledgeable respecting the particular locality involved, in a case in which the evidence focused directly upon the undue hardship to the owners if literal enforcement of zoning restrictions were required, did not need to hear testimony from an economist in the peculiar circumstances of the plot of land in question to conclude that the building of a house within the limits of an area of seventeen (17) feet by twenty (20) feet would not be economically feasible in terms of yielding a reasonable return on the property. Since there can be no doubt that the Board acted in a lawful capacity, that its action was neither arbitrary nor capricious, we cannot say that, on the issue of undue hardship, including its implicit finding on the question of a reasonable return, the Board was legally wrong, when the evidence is considered in its total aspect.[6] *See Reinauer Realty Corp. v. Nucera*, 59 N.J.Super. 189, 157 A.2d 524, 532–33 (1960); *DeStefano v. Zoning Bd. of Review*, 405 A.2d 1167 (R.I.1979); *Township of Salisbury v. Rummel*, Pa.Cmwlth., 406 A.2d 808 (1979).

The entry will be:

Appeal sustained.

Judgment of the Superior Court vacated.

Remanded to the Superior Court for an order affirming the decision of the Board of Appeals of the City of Saco granting the Gheewallas' application for a variance.

All concurring.

**5.** Despite this presumption, zoning boards of appeals should take pains to frame their legal conclusions in language commensurate with that of the statutes they enforce and to specify in their decisions the facts upon which they base such conclusions.

**6.** In our interpretation of the statutory "undue hardship" requirement "that the land in question cannot yield a reasonable return unless a variance is granted," we have spoken entirely in terms of reasonable economic return; by so doing, we do not intimate, and express no opinion thereon, whether the reference legislative language excludes any factual consideration other than economic.