**Jonathan EGGERT**

v.

**BOARD OF UNDERGROUND STORAGE TANK INSTALLERS.**

Supreme Judicial Court of Maine.

Argued Sept. 26, 1991.
Decided Nov. 13, 1991.

Thomas F. Shehan, Jr., (orally), Bangor, for plaintiff.

Dennis J. Harnish (orally), Asst. Atty. Gen., Augusta, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD, and COLLINS, JJ.

McKUSICK, Chief Justice.

Plaintiff Jonathan Eggert appeals from an order of the Superior Court (Penobscot County, *Kravchuk, J.*) that affirmed an order of the Board of Underground Storage Tank Installers directing the denial of any application submitted by Eggert to renew his underground tank installer's certificate. Rejecting all of Eggert's arguments on appeal, we affirm.

At the start of the Board proceeding Eggert was a certified underground tank installer. By statute and regulation, a certified installer is required to report to the Department of Environmental Protection (DEP), within 24 hours of discovery, the presence of oil-contaminated soil and any other evidence of an oil discharge, as well as any actual oil discharge on lands over state waters, including groundwater. *See* 38 M.R.S.A. §§ 543, 548 (1989); 06–096 C.M.R. 691, §§ 5(B)(6) note, 6(E).

In the fall of 1989 Eggert was hired to install new underground gasoline storage tanks and to remove old ones at the Gateway Emporium, a gas station in Bucksport. On the job Eggert hired an excavation contractor to remove about 300 cubic yards of soil and bark from the site and to dump the excavated material behind the Bucksport bowling alley. Upon receiving an anony-

mous complaint that the material was contaminated with oil, the DEP investigated the situation, and the matter in time came to a hearing before the Board to determine whether Eggert had violated the professional standards established for underground tank installers. From the evidence received at the hearing, the Board found that Eggert violated his regulatory and statutory duty by failing to report the oil discharges, and concluded that he was guilty of unprofessional conduct justifying disciplinary action against him pursuant to 32 M.R.S.A. § 10015(2)(B) (Supp.1989). The Board ordered that any application submitted by Eggert to renew his underground oil storage tank installer certificate be denied. Eggert then sought review of the Board's decision in the Superior Court pursuant to M.R.Civ.P. 80C and 5 M.R.S.A. § 11002 (1989).[1] The court affirmed the Board's decision and Eggert's present appeal to this court followed.

### I.

Hearings before the Board are not governed by the Maine Rules of Evidence, but rather by the Administrative Procedure Act. *See* 32 M.R.S.A. § 10004(3) (1988); 5 M.R.S.A. § 9057(1) (1989). Under the Act, evidence "shall be admitted if it is the kind of evidence upon which reasonable persons are accustomed to rely in the conduct of serious affairs." 5 M.R.S.A. § 9057(2) (1989); *see Keller v. Maine Unemployment Ins. Comm'n*, 477 A.2d 1159, 1161 (Me.1984). Eggert argues that the Board erred in admitting two letters in evidence because they do not meet this standard. We disagree. The letters were written by Eggert's own attorney in the course of the DEP investigation. Nothing in the letters or outside them suggests that they were intended by way of compromise or were a part of settlement talks. Eggert does not dispute the accuracy of the let-

ters. Indeed, he testified at the hearing to substantially the same admissions as those contained in the letters: that a worker informed him that the excavated material smelled of gasoline and that Eggert did not investigate or follow up in any fashion. The Board properly found the letters sufficiently reliable to be admitted.

### II.

Eggert next argues that since the Board was established "within the Department of Environmental Protection," 32 M.R.S.A. § 10003(1) (Supp.1990), it was required to consider the mitigating factors laid out in that agency's Administrative Consent Agreement Policy. We disagree. Even though the statute creating it located the Board structurally within the DEP, apparently for purposes of convenience, only one of its seven members is appointed by the governor from the DEP and it is charged with enforcement responsibilities completely separate from those granted to the DEP. Furthermore, the DEP's Consent Agreement Policy by its terms applies only to the statutes defining DEP's regulatory responsibilities and only to the DEP and those other agencies statutorily authorized to enforce the DEP statutes. The Board does not fall in that category of "other agency." The DEP in issuing its Consent Agreement Policy could not make it controlling upon the Board in the exercise of the Board's separate responsibilities, and plainly the DEP had no intent to do so.

### III.

Finally, Eggert argues that the Board's determination that he failed in his duty to report a leak or discharge to the DEP is not supported by substantial evidence.[2] *See Driscoll v. Gheewalla*, 441

---

1. More than a month before the Board issued its decision, 32 M.R.S.A. § 10015 (Supp.1990) had been amended by P.L.1989, ch. 845, § 14 (effective April 17, 1990), giving the Administrative Court, rather than the Superior Court, exclusive jurisdiction to review Board decisions brought under 32 M.R.S.A. § 10015(2–A) (Supp.1990). Since the Board's action against Eggert was

brought and decided under 32 M.R.S.A. § 10015(2) (Supp.1989), the Superior Court retained jurisdiction over Eggert's action for judicial review.

2. The "substantial evidence" standard is identical to the "clear error" standard used to review a trial court's factual findings. *See Gulick v.*

A.2d 1023, 1026 (Me.1982). Again, we disagree. The fact that the record contains inconsistent evidence "does not prevent the agency's findings from being sustained if there is substantial evidence to support them." *Gulick v. Board of Envtl. Protection*, 452 A.2d 1202, 1207–08 (Me.1982). We will not substitute our own judgment for that of the Board merely because the record could support a different result. *Id.* at 1208.

 Eggert himself testified that he had been told of a gasoline smell at the installation site but that he did not follow up or investigate. The DEP investigator discovered at the gas station a pile of bark that smelled of gasoline and found a similar odor detectable at the excavation site. In addition, when he investigated the bowling alley area, he noticed a strong smell of gasoline. He further testified that any person of ordinary sensibilities would have known the bark was contaminated material. A test of samples of the bark dumped behind the bowling alley revealed a "medium high" level of contamination. Confronted by the investigator with his observations, Eggert admitted that he had "screwed up." This record amply supports the Board's findings that Eggert knew of the gasoline discharge at the gas station and of the contaminated material dumped behind the bowling alley, and nonetheless failed to notify the DEP within 24 hours. An anonymous call notifying the DEP of the discharge did not relieve Eggert of his own duty to report to the DEP. We can find no reversible error in the Board's conclusion that Eggert's unprofessional conduct disqualified him from a renewal of his underground tank installer's license.

The entry is:

Judgment affirmed.

All concurring.