STATE OF MAINE

YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-09-015

CARLETON and ANDREA MABEE,

Plaintiffs

v.

ORDER

TOWN OF KENNEBUNKPORT
and CDMK, LLC,

Defendants

Carleton and Andrea Mabee appeal from the Town of Kennebunkport Planning Board's decision to approve CDMK, LLC's subdivision application and associated site plan for a four-unit multiplex structure adjacent to their property. Following hearing, the appeal will be Denied.

## BACKGROUND

The Mabees have lived at 57 North Street in Kennebunkport since 1985. They live in a Village Residential Zone, which allows multiplexes as a conditional use. In April 2006 CDMK began planning to develop a thirty-six-lot subdivision on a ninety-acre parcel adjacent to the Mabees' property. The original plans called for a multiplex unit on North Street, next to the Mabees' home. However, in response to concerns expressed by the Planning Board, the Maine Department of Environmental Protection, and the Army Corps of Engineers, the plan was amended to place the multiplex in a location behind the Mabees' property.

The Mabees raised a number of objections to the project during a number of meetings and public hearings. The one objection relevant to this appeal concerned the impact that the relocated multiplex would have on the value of their property. Kennebunkport's Land Use Ordinance requires that conditional uses such as the multiplex not "have a significant detrimental effect on the value of adjacent properties which could be avoided by reasonable modification of the plan." Kennebunkport, Me., Land Use Ordinance, §§ 10.10(A)(1)(g) (June 10, 2008).

Ms. Mabee testified that the placement of the multiplex dwelling behind her home would significantly reduce the value of her property, (R. at 234, 421, 424, 427.) She also submitted two letters from real estate brokers opining that the placement of the multiplex would have a detrimental effect on her property value. (R. at 258, 421.) These objections were raised in conjunction with other concerns including the multiplex's size and the effect of noise and light from car traffic. (R. at 421, 424, 427.) CDMK's representative responded to Ms. Mabee by outlining the remedial measures being taken to minimize the multiplex's intrusion on the Mabees' property, but did not expressly address the multiplex's impact on the Mabees' property value. (R. at 424–26.)

During deliberation the Planning Board members unanimously found that the development proposal would "have no significant detrimental effect on the value of adjacent properties which could be avoided by reasonable modification of the plan." (R. at 453.) They considered that the plans had already been modified, "to meet land use ordinance and subdivision [regulations] and state standards," and that the residential nature of the multiplex was "consistent with the area." (R. at 453.) The Board noted that the "total footprint density [was] comparable to or less than that which would be created by duplexes or single family homes that would be allowable . . . on the same area" under the ordinance. (R. at 453.)

2

The Planning Board also considered that it had already found that the multiplex would not "have a significant detrimental effect on the use and peaceful enjoyment of abutting property as a result of noise, vibration, fumes, odor, dust, glare or other cause" under another part of the Land Use Ordinance. (R. at 451–453.) This was based on the multiplex being placed further from the Mabees' property than was required by the ordinance, and the placement of walls and landscaping within that buffer zone. (R. at 451.) The Board again noted that while the multiplex was a conditional use, CDMK could put two or more duplexes in the same location as a matter of right with an equal or greater adverse impact. (R. at 451–452.)

The Board acknowledged Ms. Mabee's testimony and the opinions of the two real estate brokers regarding value. (R. at 453.) However, they also noted that no expert appraisal evidence had been submitted for or against the proposed plan, and one member of the Board expressly discounted the value of the realtors' opinions. (R. at 453.) Following discussion, the Board approved the plan. In its formal findings of fact the Board found:

> In the preliminary subdivision review process, the applicant eliminated a 4-unit building proposed along North Street, and increased the landscaping buffering along North Street and between the proposed building . . . and abutters and located the building to be lower on site to further reduce visibility. The MDEP site location of development approvals notes that: "The development along the North Street Entrance has been set back from North Street to preserve the rural character". [sic] A vegetative buffer is also to be planted between the 3 and 5-unit buildings and Bass Cove Road to reduce light and noise for the residents thereof. Supplemental plantings will be provided between the 4-unit multiplex . . . and abutter to enhance the existing mature native vegetation further screening visual impacts.

(R. at 471.) The Board further found:

> The 4-unit multiplex will be partially visible to and at 200 feet of the [Mabees].... All multiplexes are further from abutters than [the Land Use Ordinance's] required setback. The initial number of multiplexes was reduced, and one moved away from North Street. This move

enabled improved buffering between the 4-unit and the [Mabees]. The location of the 4-unit also enable[d] lowering the building to further reduce abutter sightlines. The multiplexes—in particular the 4-unit closest to the [the Mabees]—would appear to have no more and possible less impact in terms of noise, vibrations, fumes, odors, dust, glare or other cause than the number of duplexes or large single family homes that would be allowed by Ordinance on [the] same area. Extensive buffering with walls and additional landscaping (with a mix of evergreens and other plantings) near the 4-unit building is specified to protect the [Mabees]. MDEP notes that moving the multiplexes away from North Street preserves rural appearance. This is a residential use.

. . . .

The plans have been modified to meet [Land Use Ordinance] and [Subdivision Regulation] and State standards. The residential nature of the development is consistent with [the] area. The dwelling unit and total footprint density is comparable or less than that which would be allowable under the [Land Use Ordinance] on the same area. . . . There are other existing multiplexes in the Village Residential Zone. While an abutter has submitted opinions from two local real estate agents claiming a reduction in property values from the development, no expert appraisal evidence has been submitted that would indicate material detriment to abutting property values.

(R. at 473–74.) Based on these findings the Planning Board found no reason to compel denial, and thus determined that it was bound to approve the Site Plan Application. (R. at 477.)

## DISCUSSION

When the court reviews municipal action pursuant to Rule 80B, it examines the record before the municipal body "to determine if it abused its discretion, committed an error of law, or made findings not supported by substantial evidence." *Mills v. Town of Eliot*, 2008 ME 134, ¶ 5, 955 A.2d 258, 261.

The Mabees make three arguments on appeal. First, they argue that the Planning Board committed a legal error by rejecting their evidence concerning the multiplex's impact on their property value. Second, they contend that the Board erred when it approved the application despite CDMK's failure to present evidence on the issue of

4

property value. Finally, they contend that this failure, coupled with their evidence of adverse effect, compels the conclusion that the multiplex will impermissibly harm the Mabees' property value and the application must therefore be denied.

The court interprets municipal ordinances de novo, but does not make independent findings of fact or substitute its judgment for that of the municipal body. *Isis Development, LLC v. Town of Wells*, 2003 ME 149, ¶¶ 3, 3 n.4, 836 A.2d 1285, 1287, 1287 n.4; *Driscoll v. Gheewalla*, 441 A.2d 1023, 1026 (Me. 1982). The relevant ordinance in this case states:

> The Planning Board shall approve an application . . . unless it makes one or more of the following written findings with respect to the proposed development:
> . . . .
> g.    The proposed use will have a significant detrimental effect on the value of adjacent properties which could be avoided by reasonable modification of the plan . . . .

Kennebunkport, Me., Land Use Ordinance, §§ 10.10(A)(1)(g) (June 10, 2008).

This standard has two prongs. The Planning Board can only deny an application under this section if the proposed use will a) have a significant detrimental effect on the value of adjacent properties; and b) this detrimental effect can be avoided through a reasonable modification of the plan. If a proposal will significantly harm the value of adjacent properties, and no reasonable modification will minimize or eliminate that harm, then there is no ground to deny the application under the ordinance. Some degree of harm is expected and tolerated. The ordinance only seeks to avoid that harm where reasonably possible.

The Mabees focus their arguments on the first prong, the harm. Nothing in the record, however, indicates that CDMK's plan could be reasonably modified further to lessen the impact on their property value. Ms. Mabee proposed that the multiplex might be returned to its original location on North Street, (R. at 417,) but it is not clear that this

5

would lessen the negative impact on the Mabees' property value or be a reasonable modification. To the contrary, considering that the multiplex was moved from that location at the State and Town's request, there is ample reason to suggest that it would be an unreasonable alteration to the proposal.

The Mabees' evidence also does not differentiate between the effects of a multiplex versus other forms of housing at the proposed location behind their property. Ms. Mabee's testimony focused on the noise and the loss of the woods behind her yard. (R. at 417–18.) There is no evidence that constructing four single-unit buildings or two duplexes instead of one four-unit multiplex would eliminate these causes of lost value. The only identified solution is to relocate the entire development away from the Mabees' property. As noted above, the Planning Board could reasonably conclude that such a move would be unreasonable considering that the multiplex was relocated to its current location "to meet land use ordinance and subdivision [regulations] and state standards." (R. at 453.)

Turning to the Mabees' specific objections, the crux of their argument appears to be that the Planning Board had to accept its evidence regarding value absent any express opposition evidence from CDMK. Initially, the court notes that the Planning Board did consider the Mabees' evidence. While the Board could have given the evidence greater weight than it did, *see Muirgen Prop., Inc. v. Town of Boothbay*, 663 A.2d 55, 57, 59 (Me. 1995), it was not required to do so and the court will not second-guess its judgment. *Sproul v. Town of Boothbay Harbor*, 2000 ME 30, ¶ 9, 746 A.2d 368, 372; *Driscoll*, 441 A.2d at 1026. Second, as noted above, the Mabees' evidence fails to address the second prong of the ordinance. Assuming that the record compelled the Planning Board to find that the proposed development would have a significant adverse impact on the

6

Mabees' property value, it does not also compel a conclusion that this impact can be eliminated through a reasonable modification to the plan.

Finally, even though the Defendants did not offer any explicit "value" evidence, the record does not compel a conclusion that the development will significantly damage the Mabees' property value. CDMK addressed each element that the Mabees and their real estate brokers indicated would harm their property value. While CDMK did not expressly tie its responses into the value, the Planning Board could rationally infer that CDMK's modifications were precisely the sort that would reduce or eliminate the harm to the Mabees' property.

## CONCLUSION

The entry will be as follows:

The Mabees' appeal is Denied and the Planning Board's decision is Affirmed.

The clerk may incorporate this order in the docket by reference.

Dated:        September 2.1, 2010

G. Arthur Brennan
Justice, Superior Court

Plaintiffs' Attorney:
Christopher Vaniotis, Esq.
Bernstein Shur Sawyer & Nelson
P.O. Box 9729
Portland, ME 04104-5029

Defendant, Town of Kennebunkport's Attorneys:
Brian Willing, Esq.
Amy Tchao, Esq.
Drummond Woodsum & MacMahon
84 Marginal Way, Suite 600
Portland, ME 04101-2480

Defendant, CDMK, LLC's Attorney
Durward Parkinson, Esq.
Bergen & Parkinson
62 Portland Road
Kennebunk, ME 04043

7

STATE OF MAINE
YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-09-015
*CAB- YOR - 9/21/2010*

CARLETON and ANDREA MABEE,

Plaintiffs

v.

**ORDER**

TOWN OF KENNEBUNKPORT
and CDMK, LLC,

Defendants

Carleton and Andrea Mabee appeal from the Town of Kennebunkport Planning Board's decision to approve CDMK, LLC's subdivision application and associated site plan for a four-unit multiplex structure adjacent to their property. Following hearing, the appeal will be Denied.

## BACKGROUND

The Mabees have lived at 57 North Street in Kennebunkport since 1985. They live in a Village Residential Zone, which allows multiplexes as a conditional use. In April 2006 CDMK began planning to develop a thirty-six-lot subdivision on a ninety-acre parcel adjacent to the Mabees' property. The original plans called for a multiplex unit on North Street, next to the Mabees' home. However, in response to concerns expressed by the Planning Board, the Maine Department of Environmental Protection, and the Army Corps of Engineers, the plan was amended to place the multiplex in a location behind the Mabees' property.

The Mabees raised a number of objections to the project during a number of meetings and public hearings. The one objection relevant to this appeal concerned the impact that the relocated multiplex would have on the value of their property. Kennebunkport's Land Use Ordinance requires that conditional uses such as the multiplex not "have a significant detrimental effect on the value of adjacent properties which could be avoided by reasonable modification of the plan." Kennebunkport, Me., Land Use Ordinance, §§ 10.10(A)(1)(g) (June 10, 2008).

Ms. Mabee testified that the placement of the multiplex dwelling behind her home would significantly reduce the value of her property, (R. at 234, 421, 424, 427.) She also submitted two letters from real estate brokers opining that the placement of the multiplex would have a detrimental effect on her property value. (R. at 258, 421.) These objections were raised in conjunction with other concerns including the multiplex's size and the effect of noise and light from car traffic. (R. at 421, 424, 427.) CDMK's representative responded to Ms. Mabee by outlining the remedial measures being taken to minimize the multiplex's intrusion on the Mabees' property, but did not expressly address the multiplex's impact on the Mabees' property value. (R. at 424–26.)

During deliberation the Planning Board members unanimously found that the development proposal would "have no significant detrimental effect on the value of adjacent properties which could be avoided by reasonable modification of the plan." (R. at 453.) They considered that the plans had already been modified, "to meet land use ordinance and subdivision [regulations] and state standards," and that the residential nature of the multiplex was "consistent with the area." (R. at 453.) The Board noted that the "total footprint density [was] comparable to or less than that which would be created by duplexes or single family homes that would be allowable . . . on the same area" under the ordinance. (R. at 453.)

2

The Planning Board also considered that it had already found that the multiplex would not "have a significant detrimental effect on the use and peaceful enjoyment of abutting property as a result of noise, vibration, fumes, odor, dust, glare or other cause" under another part of the Land Use Ordinance. (R. at 451–453.) This was based on the multiplex being placed further from the Mabees' property than was required by the ordinance, and the placement of walls and landscaping within that buffer zone. (R. at 451.) The Board again noted that while the multiplex was a conditional use, CDMK could put two or more duplexes in the same location as a matter of right with an equal or greater adverse impact. (R. at 451–452.)

The Board acknowledged Ms. Mabee's testimony and the opinions of the two real estate brokers regarding value. (R. at 453.) However, they also noted that no expert appraisal evidence had been submitted for or against the proposed plan, and one member of the Board expressly discounted the value of the realtors' opinions. (R. at 453.) Following discussion, the Board approved the plan. In its formal findings of fact the Board found:

> In the preliminary subdivision review process, the applicant eliminated a 4-unit building proposed along North Street, and increased the landscaping buffering along North Street and between the proposed building . . . and abutters and located the building to be lower on site to further reduce visibility. The MDEP site location of development approvals notes that: "The development along the North Street Entrance has been set back from North Street to preserve the rural character". [sic] A vegetative buffer is also to be planted between the 3 and 5-unit buildings and Bass Cove Road to reduce light and noise for the residents thereof. Supplemental plantings will be provided between the 4-unit multiplex . . . and abutter to enhance the existing mature native vegetation further screening visual impacts.

(R. at 471.) The Board further found:

> The 4-unit multiplex will be partially visible to and at 200 feet of the [Mabees].... All multiplexes are further from abutters than [the Land Use Ordinance's] required setback. The initial number of multiplexes was reduced, and one moved away from North Street. This move

3

enabled improved buffering between the 4-unit and the [Mabees]. The location of the 4-unit also enable[d] lowering the building to further reduce abutter sightlines. The multiplexes—in particular the 4-unit closest to the [the Mabees]—would appear to have no more and possible less impact in terms of noise, vibrations, fumes, odors, dust, glare or other cause than the number of duplexes or large single family homes that would be allowed by Ordinance on [the] same area. Extensive buffering with walls and additional landscaping (with a mix of evergreens and other plantings) near the 4-unit building is specified to protect the [Mabees]. MDEP notes that moving the multiplexes away from North Street preserves rural appearance. This is a residential use.

. . . .

The plans have been modified to meet [Land Use Ordinance] and [Subdivision Regulation] and State standards. The residential nature of the development is consistent with [the] area. The dwelling unit and total footprint density is comparable or less than that which would be allowable under the [Land Use Ordinance] on the same area. . . . There are other existing multiplexes in the Village Residential Zone. While an abutter has submitted opinions from two local real estate agents claiming a reduction in property values from the development, no expert appraisal evidence has been submitted that would indicate material detriment to abutting property values.

(R. at 473–74.) Based on these findings the Planning Board found no reason to compel denial, and thus determined that it was bound to approve the Site Plan Application. (R. at 477.)

## DISCUSSION

When the court reviews municipal action pursuant to Rule 80B, it examines the record before the municipal body "to determine if it abused its discretion, committed an error of law, or made findings not supported by substantial evidence." *Mills v. Town of Eliot*, 2008 ME 134, ¶ 5, 955 A.2d 258, 261.

The Mabees make three arguments on appeal. First, they argue that the Planning Board committed a legal error by rejecting their evidence concerning the multiplex's impact on their property value. Second, they contend that the Board erred when it approved the application despite CDMK's failure to present evidence on the issue of

4

property value. Finally, they contend that this failure, coupled with their evidence of adverse effect, compels the conclusion that the multiplex will impermissibly harm the Mabees' property value and the application must therefore be denied.

The court interprets municipal ordinances de novo, but does not make independent findings of fact or substitute its judgment for that of the municipal body. *Isis Development, LLC v. Town of Wells*, 2003 ME 149, ¶¶ 3, 3 n.4, 836 A.2d 1285, 1287, 1287 n.4; *Driscoll v. Gheewalla*, 441 A.2d 1023, 1026 (Me. 1982). The relevant ordinance in this case states:

> The Planning Board shall approve an application . . . unless it makes one or more of the following written findings with respect to the proposed development:
> . . . .
> g.      The proposed use will have a significant detrimental effect on the value of adjacent properties which could be avoided by reasonable modification of the plan . . . .

Kennebunkport, Me., Land Use Ordinance, §§ 10.10(A)(1)(g) (June 10, 2008).

This standard has two prongs. The Planning Board can only deny an application under this section if the proposed use will a) have a significant detrimental effect on the value of adjacent properties; and b) this detrimental effect can be avoided through a reasonable modification of the plan. If a proposal will significantly harm the value of adjacent properties, and no reasonable modification will minimize or eliminate that harm, then there is no ground to deny the application under the ordinance. Some degree of harm is expected and tolerated. The ordinance only seeks to avoid that harm where reasonably possible.

The Mabees focus their arguments on the first prong, the harm. Nothing in the record, however, indicates that CDMK's plan could be reasonably modified further to lessen the impact on their property value. Ms. Mabee proposed that the multiplex might be returned to its original location on North Street, (R. at 417,) but it is not clear that this

would lessen the negative impact on the Mabees' property value or be a reasonable modification. To the contrary, considering that the multiplex was moved from that location at the State and Town's request, there is ample reason to suggest that it would be an unreasonable alteration to the proposal.

The Mabees' evidence also does not differentiate between the effects of a multiplex versus other forms of housing at the proposed location behind their property. Ms. Mabee's testimony focused on the noise and the loss of the woods behind her yard. (R. at 417–18.) There is no evidence that constructing four single-unit buildings or two duplexes instead of one four-unit multiplex would eliminate these causes of lost value. The only identified solution is to relocate the entire development away from the Mabees' property. As noted above, the Planning Board could reasonably conclude that such a move would be unreasonable considering that the multiplex was relocated to its current location "to meet land use ordinance and subdivision [regulations] and state standards." (R. at 453.)

Turning to the Mabees' specific objections, the crux of their argument appears to be that the Planning Board had to accept its evidence regarding value absent any express opposition evidence from CDMK. Initially, the court notes that the Planning Board did consider the Mabees' evidence. While the Board could have given the evidence greater weight than it did, *see Muirgen Prop., Inc. v. Town of Boothbay*, 663 A.2d 55, 57, 59 (Me. 1995), it was not required to do so and the court will not second-guess its judgment. *Sproul v. Town of Boothbay Harbor*, 2000 ME 30, ¶ 9, 746 A.2d 368, 372; *Driscoll*, 441 A.2d at 1026. Second, as noted above, the Mabees' evidence fails to address the second prong of the ordinance. Assuming that the record compelled the Planning Board to find that the proposed development would have a significant adverse impact on the

6

Mabees' property value, it does not also compel a conclusion that this impact can be eliminated through a reasonable modification to the plan.

Finally, even though the Defendants did not offer any explicit "value" evidence, the record does not compel a conclusion that the development will significantly damage the Mabees' property value. CDMK addressed each element that the Mabees and their real estate brokers indicated would harm their property value. While CDMK did not expressly tie its responses into the value, the Planning Board could rationally infer that CDMK's modifications were precisely the sort that would reduce or eliminate the harm to the Mabees' property.

## CONCLUSION

The entry will be as follows:

The Mabees' appeal is Denied and the Planning Board's decision is Affirmed.

The clerk may incorporate this order in the docket by reference.

Dated:        September 2J, 2010

Plaintiffs' Attorney:
Christopher Vaniotis, Esq.
Bernstein, Shur, Sawyer & Nelson
P.O. Box 9729
Portland, ME 04104-5029

G. Arthur Brennan
Justice, Superior Court

Defendant, The Town of Kennebunkport's
Attorney:
Brian Willing, Esq.
Amy Tchao, Esq.
Drummond, Woodsum & MacMahon
84 Marginal Way, Suite 600
Portland, ME 04101-2480

Defendant, CDMK, LLC's
Attorney:
Durward Parkinson, Esq.
Bergen & Parkinson
62 Portland Road
Kennebunk, ME 04043

7