**KITTERY WATER DISTRICT**

v.

**TOWN OF YORK.**

Supreme Judicial Court of Maine.
Argued March 5, 1985.
Decided March 27, 1985.

McEachern & Thornhill, Duncan A. McEachern (orally), Matthew T. Brock, Kittery, for plaintiff.

Murray, Plumb & Murray, E. Stephen Murray (orally), Portland, for defendant.

Before McKUSICK, C.J., and NICHOLS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

NICHOLS, Justice.

The Town of York appeals from a judgment of the Superior Court (York County) sustaining the Kittery Water District's Rule 80B appeal from the decision of the York Zoning Board of Appeals; that decision upheld a public recreational use condition imposed by the York Planning Board on the District's permit to construct a reservoir in that town. The Superior Court found that even though under certain circumstances the Planning Board may, pursuant to the Mandatory Shoreland Zoning Law, 12 M.R.S.A. §§ 4811 *et seq.* (1981 & Supp.1984–1985) and the Town's Shoreland Zoning Ordinance, impose a recreational use condition on a permit, there was insufficient evidence to support such a condition on the District's permit. The Town argues that the Superior Court: (1) exceeded its jurisdiction in not limiting its review to whether the Planning Board had authority to impose recreational conditions; (2) erred in concluding that the condition represented a "taking" of the District's property; and (3) exceeded its scope of review by making independent factual findings from the record.

The District cross-appeals, contending that the Superior Court erred in determining that the Planning Board could, under other circumstances, impose the specific public recreational use condition involved in this case.

We find no error and affirm the judgment.

The Kittery Water District, a quasi-municipal corporation created by the Legislature in 1907, provides the residents of Kittery, the Kittery Naval Shipyard, and portions of York and Eliot with water. In order to maintain a reserve water supply, the District seeks to construct a reservoir below Bell Marsh in York. Bell Marsh at times overflows into Smelt Brook, a brook which is apparently only a few feet wide in most parts and occasionally is dry. The District submitted an application to the Department of Environmental Protection to build an earthen dam on Smelt Brook to contain the overflow from Bell Marsh. The plans revealed that the reservoir would cover an area of approximately 330 acres and that all access to the reservoir would be over land owned by the District. The Department approved the project on September 28, 1983.

The Kittery Water District was also required to obtain a permit from the York Planning Board because part of the proposed reservoir located within 250 feet of Smelt Brook was designated a shoreland zone under local ordinances. On July 28, 1983, the Planning Board approved the project subject to four conditions. Only condition number four was subsequently challenged by the District; it provides as follows:

> That a plan for limited recreational usage which would include fishing and nonmotorized boat operation and nature viewing be submitted to the Planning Board based upon the fact that this was mentioned by a number of people in Town as a request and the Department of Inland Fisheries & Wildlife also encourages such activities and that one of the purposes of shoreland zoning is to encourage open space uses such as agricultural and recreational uses and that

indications were given to the Department of Environmental Protection by the Kittery Water District that the applicant would consider allowing limited public access to the proposed reservoir for recreational purposes.

The Water District appealed the York Planning Board's imposition of the above condition to the York Board of Appeals. Hearings thereon were held on October 12, 1983, and November 9, 1983. The Water District challenged the legal authority of the Planning Board "to impose as a condition to the granting of the permit that the District open access to the District's private water supply to those, in this particular case, wishing to fish or go boating." David Linney, a member of the Planning Board, spoke at the October 12 hearing and reported that the Planning Board thought that requiring some sort of recreational use was an equitable swap for the loss of a very good wildlife nesting habitat. He expressed a concern that the District would not implement a recreational use plan after the reservoir was completed and recalled that the District had stated that it would "allow some sort of recreation." There was some testimony to the effect that in the past area residents had fished in Smelt Brook and that transforming the brook into a reservoir would alter the breeding of fish. In its decision dated November 9, 1983, the Board of Appeals upheld the Planning Board's authority to impose the public recreational use condition in question. Pursuant to M.R.Civ.P. 80B the Water District appealed to the Superior Court.

Upon reviewing this record as an intermediate appellate court, the Superior Court entered its judgment on August 6, 1984, reversing the Board of Appeals on the ground that there was insufficient evidence to support the public recreational use condition in this case. Both parties appeal from that judgment.

■ The Town argues that the Superior Court exceeded its jurisdiction by examining the facts of this case in determining whether the Planning Board had authority to impose the public recreational use condition on the District's permit. When, as here, the Superior Court acts as an intermediate appellate court reviewing the action of the Board of Appeals, we examine directly the record as it developed before that Board. *See Lakes Environmental Ass'n v. Town of Naples*, 486 A.2d 91, 94 (Me.1984); *Driscoll v. Gheewalla*, 441 A.2d 1023, 1026 (Me.1982). Our review is confined to ascertaining whether there was an abuse of discretion, error of law or findings not supported by substantial evidence in the record. *Id.*

■ A brief summary of the pertinent sections of the York ordinance illustrates that it was necessary for the Superior Court to decipher what, if any, public uses of the reservoir property were being made. One of the purposes of the ordinance is to encourage "open space uses such as agriculture and recreation." Shoreland Zoning Ordinance § I(B)(5). The criteria set forth in the ordinance to be used by the York Planning Board in deciding whether to issue a permit focus primarily on *conserving* features of the environment. *See id.* at § III(A)(6).[1] The York Planning Board's

---

1. Section III(A)(6) of the Town's ordinance provides the following:

Permits Issued by Planning Board

The Planning Board shall approve or deny those applications on which it is empowered to act as stated in this Ordinance. The Planning Board may, after the submission of a complete application including all information requested, grant a permit if it makes a positive finding based on the information presented to it that, except as specifically exempted in this Ordinance, the proposed use:

a. Will not result in unsafe or unhealthful conditions;
b. Will not result in erosion or sedimentation;
c. Will not result in water pollution;
d. Will not result in damage to spawning grounds, fish, aquatic life, bird and other wildlife habitat;
e. Will conserve shoreland vegetation;
f. Will conserve visual points of access to waters as viewed from public facilities;
g. Will conserve actual points of public access to waters;

action in the instant case far exceeded the bounds of "encouraging" recreation; approval of the reservoir project hinged clearly on the Water District's cooperation in allowing the public to use the site for recreational purposes. As a member of the Planning Board stated very candidly, the condition encompassed that which was deemed an equitable swap for the loss of a very good wildlife nesting habitat. Without delving into the details of the impropriety of that "swap," we find no authority for imposing such a burden on private property.[2] The Planning Board sought to "force [the District] to bear a disproportionate burden in the providing of public facilities," and in essence the Town now entreats this Court to ignore the true motives prompting litigation. *Pacific Legal Found. v. California Coastal Comm'n*, 129 Cal.App.3d 44, 180 Cal.Rptr. 858, 865 (Cal.App.1982) (citation omitted).

The record is void of evidence indicating that the public held a legal right to use the Smelt Brook area for recreational activities, including fishing, boating, and nature viewing. Thus, the Town's implication that the York Planning Board sought to *conserve* enforceable recreational uses is without merit. In careful scrutiny of the transcripts of the hearings before the Board of Appeals, we have discerned only sparse evidence of fishing in Smelt Brook by area residents. In the absence of even a claim by the Town that it held a valid easement, arguably the individuals who occasionally had used Smelt Brook for recreational purposes could have been either licensees or trespassers. Because we find that the York Planning Board had no authority to

impose such uses, it is unnecessary at this point to reach the issue of whether the condition lends itself to an unconstitutional "taking" under the Maine Constitution. *See* Me. Const. art. 1 § 21.

In sum, not only was it within the Superior Court's scope of review to examine the facts, but also it was essential to entering a correct judgment. We decline, however, to rule, as the Water District seeks in its cross-appeal, that the Planning Board is without authority to impose public recreational use conditions under *any* circumstance.

The entry is:

Judgment affirmed.

All concurring.

---

h. Will conserve natural beauty;
i. Will avoid problems associated with flood plain development and use; and
j. Is in conformance with the provisions of the Inland Use Standards contained in Section II., Zoning Ordinance, page 33.

**2.** We are unpersuaded that the language in the statute, 12 M.R.S.A. 4811, and the ordinance concerning the conservation of "actual points of access" to water bodies empowers the Planning Board to impose the public recreational use condition in this case. The Board of Appeals' finding that designated roads provided access to

Smelt Brook implies misleadingly that "points of access" entails recreational uses.