**Myrle C. SILSBY, et al.**

v.

**ALLEN'S BLUEBERRY FREEZER, INC., et al.**

Supreme Judicial Court of Maine.

Argued May 8, 1985.

Decided Dec. 9, 1985.

James A. Silsby (orally), Ellsworth, for plaintiffs.

Bernard Staples (orally), Bar Harbor, for City of Ellsworth.

Peter Roy, Ellsworth, Paul L. Rudman, Dawn M. Pelletier (orally), George F. Terry, IV, Bangor, for Allen's Blueberry Freezer, Inc.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, WATHEN, and SCOLNIK, JJ.

VIOLETTE, Justice.

Plaintiffs Myrle C. Silsby and William S. Silsby, Sr. (Silsbys) appeal from a judgment of the Superior Court, Hancock County, affirming the grant of a special exception by the Ellsworth Zoning Board of Appeals (Board) to Allen's Blueberry Freezer, Inc. (Allen's) that would allow Allen's to build an expansion to its blueberry processing plant. Silsby contends, inter alia, that (1) the Board was without jurisdiction to consider the application for a special exception, (2) the grant of the special exception was erroneous because Allen's had failed to prove changed circumstances since denial of the previous application, and (3) the Board's findings were not supported by substantial evidence. We affirm the judgment of the Superior Court.

I.

Allen's is located in a Commercial and Institutional (C–I) Zone in the City of Ellsworth and is shown on the city's tax maps as Lot 101 of Map 35. This property is adjacent to the appellants' residential property that is located in an Urban Residential (R–1) Zone and shown as Lot 103 of Map 35. In December of 1982, Allen's acquired Lot 102 of Map 35 that also abuts the Silsby property. On December 19, 1983, Lot 102 was rezoned from R–1 to C–1.

On December 20, 1983, Allen's applied to the City of Ellsworth for a building permit to add an extension to its existing blueberry processing plant. This extension would expand the present size of the building onto Lot 102 to allow the installation of an additional blueberry processing and quick freezing line, including freezing units to provide freezing capacity for the new line. The application was denied by the building inspector as requiring a special exception. The Board scheduled a public hearing for January 26, 1984 to consider the request but remanded the application to the building inspector for further information. On January 27, 1984, Allen's filed a second application for a building permit, which was again denied by the building inspector for the same reason given in the first application; whereupon Allen's filed a written appeal to the Board.

The Board held a public hearing on the application on February 9, 1984, then the hearing was tabled to February 23. The

record before us does not include a transcript of the proceedings on February 9. While we can deduce from the record of the proceedings on February 23 and March 16 that both sides presented evidence on the subjects of objectionable odors and the adequacy of off-street parking and loading space, we cannot ascertain the exact nature of that evidence. The Board resumed the public hearing on February 23, 1984, with four of the five members present. After denying Silsbys' request to reopen the hearing for further evidence, the Board made no findings of fact but proceeded to vote on the application. The Board first voted two for, and two against, a motion to deny the application for a special exception on the ground that Allen's had failed to satisfy both the objectionable odors and adequate parking and loading space conditions of the zoning ordinance. A subsequent motion to grant the special exception on the basis that both conditions of the ordinance had been satisfied again resulted in the same two votes for and two votes against. The Board was thereupon informed by its counsel that, because the ordinance required the concurring vote of at least three members for approval of the application, the vote constituted a denial.

On February 28, 1984, Allen's filed another application with the building inspector for the same building permit, along with four documents identified as (1) Salsbury survey dated January 26, 1984; (2) Site Plan for Allen's Blueberry Freezer, dated January 24, 1984 and revised January 27, 1984; (3) Site Plan—Williams Lot, dated February 28, 1984; and (4) Site Plan—Giles Lot, dated February 28, 1984. Allen's proposed to use the Williams and Giles Lots for off-street employee parking. On March 1, 1984, the building inspector refused to grant the permit, noting the

matter had to go to the board of appeals for a special exception. The building inspector then transferred the application and accompanying documents to the Board. On March 12, 1984, Allen's submitted an option for purchase of the Giles property. The Board scheduled and held a public hearing on the application on March 16, 1984. At the outset, Silsbys made several procedural objections to the holding of the hearing, two of which we consider. They argued the Board was without jurisdiction to hold the hearing because Allen's had not filed a written appeal from the building inspector's denial of the application, as required by the zoning ordinance. They also argued the application did not demonstrate that any substantial change of conditions materially affecting the merits of the application had occurred since the Board's denial of the prior application. The Board decided it had authority to hold the hearing, and, acknowledging that Allen's had to show a substantial change, deferred ruling on this objection until later on in the hearing. The hearing continued with the presentation of evidence on the special exception conditions of objectionable odors and adequacy of off-street parking and loading space.[1] The Board decided during the hearing that with the submission of the proposed acquisition and plan of the Giles property and the drawings of the Williams property, Allen's application demonstrated a significant change of conditions since the last application. Following the closing of evidence and argument the Board, by a three to two vote, conditionally approved Allen's application for a special exception to build an addition to its freezing plant, finding that the addition would not emit objectionable odors, that adequate loading areas were provided, and that off-street parking would be satisfied with imposition of certain conditions, namely, acquisition of

---

1. Art. X, Sec. (4)(B)(18) of the Ellsworth Zoning Ordinance, Commercial and Institutional "C–1" Zone provides:

    Board of Appeal may permit as special exceptions:

(18) Food processing and freezing, but excluding slaughterhouses and chicken processing plants provided that:
    a. Proposed activity will not emit objectionable odors
    b. Adequate off-street parking and loading area is provided.

the Giles lot and removal of the buildings or obstructions on the lot, that parking be delineated and drawings so showing be presented to the building inspector for his approval, and that the lot be designated for Allen's employees only. On March 23, 1984, the Board gave Allen's written notice of its decision. Silsby thereupon filed an 80B complaint, M.R.Civ.P., in Superior Court, Hancock County, seeking review of the Board's decision.

## II.

When, as here, the Superior Court acts as an intermediate appellate court reviewing the action of the Board of Appeals, we examine directly the record before the Board without deference to the decision of the Superior Court. *Kittery Water District v. Town of York,* 489 A.2d 1091, 1093 (Me.1985); *Lakes Environmental Ass'n. v. Town of Naples,* 486 A.2d 91, 94 (Me.1984). Our review is confined to ascertaining whether there was an abuse of discretion, error of law, or findings of fact not supported by substantial evidence in the record. *Id.*

█ Appellant contends that the Board was without jurisdiction to hear the request for a special exception because Allen's had not filed a written appeal from the building inspector's refusal to grant the permit. When Silsby raised this objection, the chairman responded that it had been the general practice, when a request for a special exception was made, to have the building inspector refuse the request because a special exception was required and he would then pass the application on to the Board, which would act on the application. It appears the Board did not adhere to a uniform practice and heard such applications in the aforedescribed manner as well as upon written appeal. It was the Board counsel's opinion that, under the city's Zoning Ordinance, the Board had the authority to hear and grant an application for a special exception without the requirement of a formal notice of appeal because the Board was then not acting in an appel-

late role but, rather, was exercising its original jurisdiction as the only body authorized to consider a request for a special exception. He added that the building inspector had no authority over a use classified as a special exception other than to refer the matter to the Board. He distinguished this authority from that when the Board acted in its true appellate capacity.

While a literal reading of the pertinent enabling statutes, the zoning ordinance and the Board's rules and regulations appears to support appellants' position, our analysis of the issue leads us to agree with the Board's conclusion. 30 M.R.S.A. § 2411 (1978) permits a municipality to establish a board of appeals and provides for its organization, procedures and jurisdiction. Under 30 M.R.S.A. § 2151(4)(C)(5) (1978), a municipality may enact an ordinance regulating the construction of new buildings and additions and alterations of existing buildings and an appeal in writing may be taken from an order of the building inspector refusing to grant a permit therefor to a board of appeals established in accordance with section 2411. 30 M.R.S.A. § 4963 (1978 & Supp.1984–85) provides in pertinent part:

§ 4963. **Zoning adjustment**

1. **Establishment.** A board of appeals is established in any municipality which adopts a zoning ordinance. The board of appeals shall hear appeals from actions or failure to act of the official or board charged with the enforcement of the zoning ordinance, unless only a direct appeal to Superior Court has been provided by municipal ordinance. Such board of appeals shall be governed by section 2411, except that section 2411, subsection 2 shall not apply to boards existing on September 23, 1971.

2. **Powers.** In deciding any appeal:

   **A.** The board may interpret the provisions of the ordinance which are called into question;

   **B.** The board may approve the issuance of a special permit or condition-

al use permit in strict compliance with the ordinance;

    **C.** The board may grant a variance in strict compliance with subsection 3.

Article VII, section 1, of the Ellsworth Zoning Ordinance establishes a Board of Appeals, and Section 7 of Article VII defines the powers and duties of the Board as follows in pertinent part:

    **A. Administrative Review**—To hear and decide appeals where it is alleged there is error in any order, requirement, decision, or determination made by the Building Inspector in the enforcement of this ordinance.

    **B. Special Exceptions**—To hear and decide special exceptions upon which the Board is required to act under the terms of this ordinance. An exception may be granted only for a use which is specifically listed in this ordinance as a permitted exception in the zone in which the exception is requested. In granting an exception, the Board may prescribe appropriate conditions or safeguards.

    **C. Variance**—To authorize upon appeal in specific cases such variance from the terms of this ordinance as will not be contrary to the public interest where, owing to special conditions, a literal enforcement of the provisions of this ordinance would result in unnecessary hardship. . . .

Section 3 of Article VII states that an appeal from any decision of the building inspector to the Board shall be taken by filing a written notice of appeal specifying the grounds thereof. Section II(A) & (B) of the Board's Rules and Regulations comport with Art VII, sec. 3 of the Ordinance.

Notwithstanding that the aforementioned pertinent enabling statutes, provisions of the zoning ordinances and of the Board's rules and regulations all speak of an appeal to the Board, we perceive the issue to be whether the Board was acting in an appellate or original jurisdiction capacity in considering the application for a special exception. Zoning enabling acts and zoning ordinances usually do not characterize the jurisdiction of a board of adjustment as original or appellate, and such acts and ordinances must be inspected to determine the nature of the board's jurisdiction with regard to the various types of relief. 82 Am.Jur.2d, *Zoning and Planning,* § 297 at 855 (1976).[2] The jurisdiction vested in a board of adjustment to hear and decide appeals from the orders, decision, or determination by an administrative official is clearly appellate, but the board's jurisdiction with regard to a special permit may be either appellate or original in nature. *Id.*[3] Where the zoning ordinance provides that certain uses may be maintained only upon the issuance of a special permit by the board, the board has original jurisdiction with regard to the issuance or denial of the permit. *Id.*

In *Cushing v. Smith,* 457 A.2d 816, 819 (Me.1983), this Court said that "30 M.R.S.A. § 4963(2)(B) permits a municipality to authorize either the zoning board of appeals or a planning board, agency or office to grant a special permit in the first instance." We further said that "[W]here, as in the instant case, the municipality has authorized the planning board to make the initial determination regarding a special exception permit, then the planning board is "the office charged with the enforcement of the zoning ordinance" as contemplated by 30 M.R.S.A. § 4963(1) with respect to the granting of special exceptions." *Id. See Thornton v. Lothridge,* 447 A.2d 473, 476 (Me.1982) (a town's zoning board of appeals had authority under section 4963(2)(B) to make initial determination whether applicant qualified for exception.) The Ellsworth Zoning Ordinance, Art. VII, sec. 7(B), which comports with 30 M.R.S.A. § 4963(2)(B), authorizes the Board to grant

---

**2.** Am.Jur.2d uses the term "board of adjustment" as a generic one to indicate board of adjustment, board of review or board of appeal.

**3.** Am.Jur.2d uses the term "special permit" as a generic one to denote special permit, special exception, conditional use permit, or special use permit.

special exception permits in the first instance. We are led to conclude that the Board was acting in its original jurisdiction, and not in its appellate role acting upon a decision of the building inspector, in its consideration of Allen's application for a special exception. It therefore had authority to consider the application without the requisite of a written appeal. A use by exception is a particular type of use, differing substantially from a use by variance, as we said in *Stucki v. Plavin,* 291 A.2d 508, 511 (Me.1972):

> A special exception use differs from a variance in that a variance is authority extended to a landowner to use his property in a manner prohibited by the ordinance (absent such variance) while a special exception allows him to put his property to a use which the ordinance expressly permits.

Our determination of this issue in no way excuses either the applicant nor the Board from compliance with every provision of the zoning ordinance. In this respect, proper public notice was given of the Board's special meeting on March 16, 1984, and the business to be taken at that meeting. Appellants were fully apprised of the relief sought in the application and were given full opportunity to present their case. We find no error of law by the Board in hearing this application.

### III.

Appellants also claim the Board committed error in holding the hearing and granting the special exception because Allen's had failed to show changed circumstances since denial of the previous application. We determine that the vote of the Board on February 23, 1984, was a denial of the pending application. It is clear that the Ordinance required the concurring vote of 3 members of the Board in favor of the application.[4] Because of the clear language of the Ordinance, we are not required to determine the consequences of a tie vote.

The Ellsworth Zoning Ordinance has no provision dealing with reapplication following the denial of a special exception by the Board. We have previously stated, in the case of a reapplication for a variance, that even in the absence of an express provision in a zoning ordinance, the general rule is that a board of zoning appeals or a board of adjustment may not entertain a second application concerning the same property after a previous application has been denied, unless a substantial change of conditions had occurred or other considerations materially affecting the merits of the subject matter had intervened between the first application and the subsequent application. *Driscoll v. Gheewalla,* 441 A.2d 1023, 1027 (Me.1982) (citations omitted). We can discern no reason why this rule should not apply also to special exceptions.

The Board found that inclusion of the Williams lot plan, the Giles lot plan and the option to acquire the Giles lot constituted a "significant change" in conditions between the February 28 application and the prior application. The Silsbys agree there was a substantial change in the application with respect to the off-street parking and loading requirement of the special exception, but argue that Allen's was also required to show a substantial change on the objectionable odor requirement. The Board made no finding as to any substantial changes on objectionable odors. While the Board denied the prior application, we have no specific findings by the Board whether Allen's failed to comply with either or both requirements of the special exception. In the absence of such findings, we are of the

---

4. Art. VII, sec. 6 of the Zoning Ordinance provides:

   The concurring vote of 3 members of the Board shall be necessary to reverse any order, requirement, decision, or determination of the Building Inspector, or to decide in favor of the applicant of any matter on which it is required to pass under this ordinance, or to affect any variation in the application of this ordinance. The failure of the Board to issue a written notice of its decision, directed to the applicants, within thirty (30) days of filing of the appeal constitutes a denial of the appeal.

opinion that the Board's finding that a substantial change in circumstances had occurred was within the Board's discretion. This determination by the Board will be disturbed only if its discretion is abused. *Driscoll,* 441 A.2d 1027.

### III.

██ Contrary to appellants' argument, we conclude that the Board's decision is supported by substantial evidence on the entire record. *Bruk v. Town of Georgetown,* 436 A.2d 894, 898. The Board found five loading spaces existed where four was required. With respect to off-street parking, it found the Williams lot inadequate but determined the Giles lot would provide more than the essential number of parking spaces and conditioned its approval of the application upon Allen's acquisition of that property for employee parking space. The Board found the proposed addition would not emit additional objectionable odors. While evidence on this requirement of the special exception was conflicting, we cannot say, upon examination of the record, the Board could not reasonably have found this requirement was met. *See Driscoll,* 441 A.2d 1026.

We do not consider it necessary to address other issues raised in the appeal.

The entry is:

Judgment affirmed.

All concurring.