STATE OF VERMONT
ENVIRONMENTAL COURT

|  |  |
|---|---|
| In re: Appeals of Wesco, Inc. | Docket Nos. 152-7-02 Vtec; |
| (1041 Shelburne Rd., | 153-7-02 Vtec; |
| South Burlington) | 6-1-03 Vtec; and |
|  | 207-10-05 Vtec |

## Decision on Pending Cross-Motions for Summary Judgment

This matter concerns appeals by Wesco, Inc. (Appellant) from four decisions of the City of South Burlington (City) Development Review Board (DRB) denying site plan, conditional use and variance approval and refusing to consider Appellant's application for a planned unit development (PUD). Each decision relates to proposed improvements of the same property, used as the "Champlain Farms Texaco," on Shelburne Road. Appellant is represented jointly by Marc B. Heath, Esq. and William E. Simendinger, Esq.; the City is represented by Amanda S. E. Lafferty, Esq.

## Procedural History

Before reaching the substantive issues presented by the parties' cross-motions for summary judgment, a brief review of the substantial and protracted history of this proposed development is warranted. On October 17, 2001, Appellant submitted an application to the DRB requesting conditional use approval for improvement of their gasoline service station and convenience store located at 1041 Shelburne Road. Less than a month later on November 7, 2001, Appellant submitted a second application to the DRB requesting approval of a variance from setbacks on the property. See Exhibit H attached to City's Mot. for Summ. J. in Docket Nos. 152-7-02 Vtec, 153-7-02 Vtec and 6-1-03 Vtec. On March 18, 2002, Appellant submitted another application to the DRB, this one for site plan review for the proposed improvements on the property. After reviewing the conditional use and variance applications at three public hearings on

January 22, April 2, and May 21, 2002, and after reviewing Appellant's application for site plan review at public hearings on April 2 and May 21, 2002, the DRB denied all three applications by two written decisions on June 18, 2002. Appellant appealed the denial of its application for variances in Docket No. 152-7-02 Vtec and appealed the denial of its applications for conditional use approval and site plan review in Docket No. 153-7-02 Vtec.

In Docket No. 153-7-02 Vtec, this Court granted Appellant's motion to remand to the DRB to consider Appellant's conditional use and site plan review applications under § 26.002 of the City's Zoning Regulations, relating to alterations to noncomplying structures. On remand, the DRB again denied Appellant's applications on December 17, 2002. Appellant thereafter appealed the DRB's denial to this Court in Docket No. 6-1-03 Vtec. After that appeal, the parties agreed to consolidate all the then pending appeals and to put the appeals on inactive status, pending Appellant's submission of yet another application to the DRB, this time for planned unit development approval.

On July 1, 2005, Appellant submitted a complete application to the DRB for preliminary and final plat review requesting to have their gasoline service station and convenience store improvements approved as a planned unit development (PUD). By letter dated July 8, 2005, the City's Zoning Administrative Officer (Administrative Officer) refused to accept the applications and returned them to Appellant. In his letter refusing the applications, the Administrative Officer wrote that because Appellant's other applications for improvement of the same property were on appeal to the Environmental Court, any subsequent application to develop or improve the property constituted a request for an advisory opinion, which the Administrative Officer could not render.

Appellant appealed the Administrative Officer's decision not to accept the applications for preliminary and final plat review to the DRB, which held a public hearing on the appeal on August 16, 2005. By decision dated September 21, 2005, the

DRB upheld the Administrative Officer's decision to refuse to consider and to return the applications. Appellant subsequently appealed the DRB's decision to this Court in Docket No. 207-10-05 Vtec.

## Issues Presented

Both parties filed cross-motions for summary judgment in the consolidated appeals and in Docket No. 207-10-05 Vtec. The issues raised by the cross-motions for summary judgment and by Appellant's Statement of Questions in the consolidated appeals -- Docket Nos. 152-7-02 Vtec, 153-7-02 Vtec and 6-1-03 Vtec -- may be summarized as follows:

(a)     Whether Appellant's proposed improvements to the gasoline station and convenience store require a variance or variances?

(b)     Whether Appellant can obtain a variance?

(c)     Whether Appellant's proposed site plan should be approved?

(d)     Whether Appellant's proposed improvements are entitled to approval as a conditional use?

(e)     Whether Appellant must still obtain a conditional use permit for its new convenience store, given that amendments to the City's Zoning Regulations, effective September 6, 2005, now allow as a permitted use convenience stores under 3,000 square feet that are located in a principal structure on property in the Commercial 1 zoning district?

Both Appellant and the City have also filed cross-motions for summary judgment based on Appellant's Statement of Questions in Docket No. 207-10-05 Vtec. The issues raised by the Statement of Questions and cross-motions for summary judgment in that docket may be summarized as follows:

(a)     Whether Appellant is entitled to submit an application for a planned unit development (PUD), despite the fact that this Court has not yet ruled on the previously filed variance, site plan and conditional use application appeals?

(b)     Whether Appellant's application for a PUD constitutes a request for an advisory opinion, which the DRB can refuse to provide?

(c)     Whether the DRB is prevented from hearing and ruling on Appellant's application for a PUD based on the doctrine of res judicata?

(d)     Whether Appellant's PUD application should be deemed approved under 24 V.S.A. § 4448(d) for the failure of the Administrative Officer to act on the application in a timely manner?

(e)     Whether this Court can rule on the merits of Appellant's PUD application or whether it should be remanded to the DRB for their consideration?

(f)     Whether Appellant's PUD application satisfies the Zoning Regulations' criteria for approval of a PUD?

### Factual Background

For purposes of our analysis of each party's motion, any facts in dispute are viewed in a light most favorable to the non-moving party. Toys, Inc. v. F.M. Burlington Co., 155 Vt. 44, 48 (1990). The following facts are undisputed unless otherwise noted:

1.     Appellant owns a 0.38-acre, 100-foot deep (east-west) and 165-foot wide (north-south), rectangular parcel of property at 1041 Shelburne Road in the City's Commercial 1 (C1) zoning district. The property has 156 feet of frontage on the west side of Shelburne Road.

2.     The existing uses of the property are as a convenience store and gasoline service station, now or formerly known as the Champlain Farms Texaco. The service station consists of two fuel pump islands with a total of four fueling positions, roughly in the middle of the parcel. The building housing the convenience store use was originally only 8′ x 28′ with the long side oriented north-south[1] (i.e.: parallel to Shelburne Road).

3.     In 1984, Appellant applied for and received a variance from the rear setback requirements of the City's Zoning Regulations to construct a 10′ x 48′ addition to the rear of the convenience store nine feet from the rear lot line. After the

---

[1] Most building dimensions are approximate as they are estimates taken from measurement by scale on Appellant's 1984 and March 13, 2002 site plans.

*4*

construction of the addition, the convenience store, as it exists now, is 559 square feet and shaped like a short T with the length of the rear wall being forty-eight feet long. Due to an apparent error in constructing the 10′ x 48′ addition, Appellant's existing structure was built one foot closer to the rear lot line (i.e.: eight feet away) than authorized by the 1984 variance. No Certificate of Occupancy was issued after the construction of the 10′ x 48′ addition, presumably because the structure did not comply with the variance authorizing its construction.

4. The convenience store building has an eight-foot rear setback, a seventy-foot front setback, a sixty-one-foot southerly side setback, and a fifty-five foot northerly side setback. The existing building coverage is 11%.

5. In addition to the T-shaped convenience store and the two gasoline islands, there is a 1,344 square-foot canopy over the original front portion of the convenience store and the pump islands. The canopy is set back approximately thirty-seven feet from the front, easterly lot line; approximately twenty feet from the rear (i.e.: westerly) lot line; approximately sixty-eight feet from the southerly side lot line and approximately sixty-five feet from the northerly side lot line.

6. There is also a forty-eight square-foot wood shed near the southwesterly corner of the convenience store.

7. The majority of Appellant's parcel is paved with asphalt or concrete, though there are shrubs located between the parcel's two curb cuts onto Shelburne Road. The northerly curb cut is forty-two-feet-wide; the southerly curb cut is forty-feet-wide. There is also significant vegetation which wraps around the southerly and westerly boundaries of the parcel from the southeast corner to just north of the rear of the existing convenience store.

8. The total lot coverage of the existing convenience store and gasoline service station is 68%, and the existing coverage within the thirty-foot front setback area (i.e.: along Shelburne Road), excluding landscaping, is 79%.

9. As stated above, in the fall of 2001, Appellant applied for conditional use approval and a variance from the C1 District's thirty-foot rear setback to replace the existing convenience store, proposing to enlarge it to 1,104 square feet or 23′ x 48′. In the spring of 2002, Appellant also applied for site plan approval for replacing and enlarging the convenience store and to replace the existing 1,344 square-foot canopy with a new 768 square-foot, 24′ x 32′ canopy. All approvals sought by Appellant were denied and appealed to this Court.

10. In the first three consolidated dockets, Appellant proposes replacing and upgrading the existing convenience store and service station canopy. Appellant proposes to replace the existing T-shaped convenience store building with a rectangular building. The new building's rear wall will be in the same location as the existing T-shaped convenience store's forty-eight-foot-long north-south rear wall, just one foot further from the rear (westerly) lot line. Effectively, this replacement adds two areas of new floor space on both the north and south sides of the original, pre-1984 convenience store building to the east of the 10′ x 48′ addition built in 1984.

11. The proposed 1,104 square-foot, 23′ x 48′, rectangular convenience store would have a nine-foot rear setback, a sixty-nine-foot front setback, a fifty-six-foot northerly side setback and a sixty-one-foot southerly side setback.

12. Appellant's proposed new 24′ x 32′ canopy would have thirty-eight-foot front and rear setbacks and would maintain the existing sixty-eight-foot southerly side setback and sixty-five-foot northerly side setback.

13. The aggregate cost of Appellant's proposed improvements would not exceed 25% of the fair market value of the property. The proposed improvements would also reduce the total lot coverage from 68% to 61%. The front setback coverage, excluding landscaping, would also be reduced from 79% to 68%. The existing building coverage would remain at 11%.

14.	Aside from the changes to the convenience store building and canopy, Appellant proposes reducing the width of both curb cuts to thirty-six feet, designating eight parking spaces, screening the dumpster near the southwesterly corner of the property, constructing a new landscaped island between the curb cuts and installing new exterior light fixtures.  Appellant has not provided a point-by-point lighting plan of the new fixtures.

15.	Also as mentioned above, on July 1, 2005, Appellant submitted a complete application to the DRB for preliminary and final plat review to have their gasoline service station and convenience store improvements approved as a PUD.  The merits of Appellant's PUD application were never addressed by the DRB because it upheld the Administrative Officer's decision not to accept the application.  While the Administrative Officer recognized that this new application related to an alternative development proposal, he concluded that the application constituted a request for an advisory opinion that the DRB and Administrative Officer cannot give.  Appellant appealed the DRB's refusal to consider the merits of the PUD application to this Court in Docket No. 207-10-05 Vtec.

## Discussion

Appellant's proposed improvements to the gasoline service station and convenience store conform to only some of the dimensional standards for the C1 District.  Appellant's project does not exceed the C1 District's maximum lot coverage of 70%, the fifteen-foot side setback standards and the required parking of eight spaces, due to the fact that the convenience store contained 804 square feet of retail floor area. City of S. Burlington Zoning Regulations Tbl. 25-1, App. A (Aug. 21, 2001).  Appellant's 16,500 square-foot lot is noncomplying, as it is less than the 40,000 square-foot minimum lot size.  The parcel also does not conform to the 200-foot minimum frontage required along Shelburne Road; the fifty-foot front setback; the thirty-foot rear setback; or the maximum front yard coverage of 30%.  Regulations Tbl. 25-1l; §§ 25.101, 25.107.

Although facts have not been provided regarding the date the lot was created, we presume for the sake of our analysis here that Appellant's lot qualifies as a lawful, pre-existing small lot. Regulations § 25.111. However, this does not exempt Appellant from meeting the C1 District's minimum setback requirements. See In re LaBounty Enters., Inc., Docket Nos. 232-12-04 Vtec and 85-5-05 Vtec, slip op. at 4 (Vt. Envtl. Ct. Sept. 16, 2005); In re: Appeal of Jenness & Berrie, Docket No. 134-7-04 Vtec, slip op. at 1 (Vt. Envtl. Ct., Sept. 6, 2005). Notably, Appellant does not qualify for any of the exceptions to the setback and lot coverage requirements in Regulations § 25.118 because its proposed principal use is neither a single or two-family residential use. Thus, the full setback and lot coverage requirements in the C1 District apply, unless all variances needed for Appellant's improvements are granted.

## I. Docket No. 152-7-02 Vtec: Appellant's variance applications and the need for them.

### A: Are variances needed?

Both Appellant and the City have filed cross-motions for summary judgment on the issues of whether Appellant needs to obtain a variance for its proposed improvements and whether such variance can be granted. Appellant's previously-approved variance, obtained in 1984, allows the existing, twenty-foot-high, T-shaped convenience store to be located nine feet from the rear (westerly) lot line and wholly within the 30-foot minimum rear setback required by Regulations Table 25-1. The existing convenience store is located only eight feet from the rear lot line, and as such does not conform to the previously approved variance. Appellant's proposed 1,104 square-foot, 23' x 48', rectangular convenience store will also be located almost entirely within the rear setback, except for a small 3.75' x 48' rectangular sliver composing the easterly side or front of the building, which is outside the rear setback. Regarding the rear setback variance, the question becomes whether Appellant's 1984 variance allows for the construction of the new convenience store nine feet from the rear lot line, or

whether an additional dimensional variance is needed. We conclude that additional variances are needed.

### B: variances needed for new convenience store.

"[A] variance is granted on proof of circumstances peculiar to the land of the applicant, not on the ground that the applicant himself has a special problem. A variance is granted, not as a right vested in the applicant, but as a right of use which applies to and runs with specific land." K. Young, Anderson's American Law of Zoning § 20.71 (4th ed. 1996). Thus, if Appellant's new convenience store was to occupy the same volume of the rear yard as the existing convenience store, he would not need a new dimensional variance, as a yard is "open space on a lot, unoccupied and unobstructed from the ground upward," Regulations § 28.163. However, while both buildings are twenty feet tall, a portion of the new rectangular convenience store building occupies space within the rear setback where the existing T-shaped convenience store does not. Thus, Appellant's proposed new structure will encroach further upon the rear setback and therefore requires additional variances. See Appeal of Barnes, 154-8-04 Vtec, slip op. at 6-7 (Vt. Envtl. Ct., May 18, 2005) (additional height added to a pre-existing noncomplying structure inside setback needs a variance); see also In re Appeal of Tucker, Docket No. 123-7-98 Vtec (Vt. Envtl. Ct., Aug. 2, 1999); aff'd Docket No. 1999-399 (Vt., Mar. 10, 2000) (unreported mem.) (three-justice panel) (permit to build one-story building extending into side setbacks does not authorize expansion to two stories within the setbacks, even though it would not have violated the height limitations or extended laterally any farther into the setbacks). Thus, Appellant must obtain an additional dimensional variance for any new construction in the rear setback that was not covered by the 1984 variance.

Appellant proposes moving the new convenience store one foot closer to the center of the lot from the rear westerly lot line to comply with the 1984 variance, which allowed a twenty-foot-high convenience store to be built nine feet from the rear lot line.

A majority of the volume of the new convenience store would be included in the 1984 variance. But Appellant proposes a rectangular building in lieu of the existing T-shaped structure; the northeasterly and southeasterly corners of the new convenience store will be new construction that will encroach upon additional areas within the rear setback. Excluding a 3.75′ x 48′ narrow rectangular sliver composing the front of the new building that is outside the rear setback area, there is an approximately 10′ x 8.75′ area on southerly side of the new structure and an approximately 10″ x 9.38′[2] area on the northerly side of the new structure in the rear setback for which a dimensional variance from the rear setback requirement is needed but has not as of yet been applied for or obtained.

Aside from those two rectangular areas on the northerly and southerly ends of the building, the new convenience store would be constructed within Appellant's 1984 variance. Appellant must therefore apply for a new dimensional variance from the rear setback requirement for any new construction in the rear setback, but not for any construction nine feet easterly of the rear lot line that corresponds to the footprint of the old T-shaped convenience store. Thus, additional variances are needed before the proposed new construction can be authorized.

We discuss below whether new construction in this instance is permitted under the Regulations. But we cannot reach the issue of whether these additional variances should be allowed, as that request was never posed to or acted upon by the DRB. We regret that we cannot reach the substantive analysis of Appellant's needed variances, but must respect the limits of this Court's jurisdiction. Our Supreme Court has repeatedly stated that this Court is without jurisdiction to entertain zoning applications that have not first been reviewed by the appropriate municipal panel. See Simendinger

---

[2] The dimensions of these two rectangular areas are approximate as they are estimates taken by measurement from the scale on Appellant's March 13, 2002 site plan.

and Wesco, Inc. v. City of Barre, 171 Vt. 648, 651 (2001) and In re Torres, 154 Vt. 233, 235 (1990).

### C: variances needed for new canopy.

Appellant also proposes to replace the existing canopy over the two gasoline pump islands with a new, 24′ x 32′ canopy that extends into the required fifty-foot front setback. Regulations § 25.102. An 11.25′ x 32′ section of the new canopy extends easterly into the front setback.[3] In relation to the front setback requirement, Appellant's proposed new canopy has a similar footprint to the existing canopy, which also extends into the fifty-foot front setback.

Since the existing canopy does not meet the C1 District's front setback requirement, it is a noncomplying structure and subject to Regulations § 26. Under the law in effect when Appellant filed its application for the new canopy in 2002, noncomplying structures were also nonconforming uses, 24 V.S.A. § 4408 (2002); In re Miserocchi, 170 Vt. 320, 323 (2000); see also Smith v. Winhall Planning Comm'n, 140 Vt. 178, 181-182 (1981) (rights vest under the existing regulations as of the time when proper application is filed). In this instance however, modifying or replacing canopies over existing gasoline pumps are not classified as extending or enlarging the nonconforming use of the property and are to be treated as noncomplying structures, not nonconforming uses. In re Pearl Street Mobil, Docket No. 2001-249, slip op. at 3 (Vt., Dec. 21, 2001) (unreported mem.) (three-justice panel).

Unlike the proposed complying canopy over the gasoline pumps at issue in In re Appeal of Wesco Inc., Docket No. 107-6-04 Vtec (Vt. Envtl. Ct., June 10, 2005), aff'd Docket No. 2005-277 (Vt., Mar. 29, 2006) (unreported mem.) (three-justice panel), the new canopy proposed here violates the Regulations' front setback requirement. As

---

[3] The dimensions of the new canopy's area in the front setback area are taken by scale measurement from Appellant's March 13, 2002 site plan. We also note that it appears that Appellant's March 13, 2002 site plan should have the canopy size listed as 24′ x 32′ instead of 32′ x 24′ to be consistent with other area measurements on the plan, including the dimensions of the new convenience store.

such, the proposed canopy may only be built if it is allowed as a replacement of a noncomplying structure under Zoning Regulations § 26 or if a variance is granted from the front setback requirements.

Zoning ordinances are interpreted according to the general rules of statutory construction. In re Weeks, 167 Vt. 551, 554 (1998). Thus, we first look to the plain meaning of the ordinance. In re Stowe Club Highlands, 164 Vt. 272, 279 (1995). If the plain meaning "resolves the conflict without doing violence to the legislative scheme, there is no need to go further . . . ." Lubinsky v. Fair Haven Zoning Bd., 148 Vt. 47, 49 (1986).

Section 26 of the City's Zoning Regulations is clear and unambiguous. Section 26.002, the Regulations' only section authorizing changes to noncomplying structures, provides in part:

> [A]ny noncomplying building or structure may be altered, including additions to the building or structure provided such alteration does not exceed in aggregate cost . . . twenty-five (25) percent . . . of the [commercial property's] fair market value . . . . In the event an addition or an expansion to a building or structure is proposed, the addition or expansion itself must comply with the provisions of these regulations (e.g., setback requirements).

Regulations § 26.002.

The Regulations further define the term "alterations" to a building or structure as, "a change or rearrangement in the structural parts or in the exit facilities, or an enlargement, whether by extending on a side or by increasing in height." Id. § 28.103. Nothing in the record before us suggests that Appellant's proposed plans meet this definition of "alterations."

The plain language of this section and the definition of "alterations" dictate that Regulations § 26.002 is not applicable to Appellant's proposed canopy because Appellant does not propose to alter the existing structure, but rather to replace it

entirely. Although the new canopy is smaller than the existing canopy, Appellant does not propose to alter the existing canopy, which is permitted by the terms of § 26.002.

Nothing in § 26 allows for the replacement of a noncomplying structure, in the absence of damage or destruction "by fire, collapse, explosion, or similar cause." See id. § 26.005. Nothing in the record here reveals that such a calamity has occurred here. Therefore, in order to replace the existing canopy over the gas pumps, Appellant must obtain a variance for the proposed new canopy's 11.25′ x 32′ intrusion into the fifty-foot front setback.

**D: variances needed for front setback coverage.**

Regulations § 25.107 requires that "[i]n the case of nonresidential uses, not more than 30% of the area of the required front yard setback shall be used for driveways and parking and the balance shall be suitably landscaped and maintained in good appearance." Id. § 25.107. Appellant's existing front yard coverage is 79% and is therefore noncomplying with Regulations § 25.107. Appellant proposes reducing the front yard coverage to 68%, but that does not obscure the fact that the structures proposed for Appellant's lot will remain noncomplying with the front yard coverage requirement. As noncomplying structures are also nonconforming uses, Miserocchi, 170 Vt. at 323, Appellant's change, albeit a reduction in the nonconforming use, is prohibited by § 26.004 of the Zoning Regulations, which explicitly prevents changing from one nonconforming use to another. Therefore, Appellant also needs to obtain a variance from the 30% maximum front yard coverage requirement.

**E: summary of needed variances.**

In sum, Appellant must obtain at least three variances to build the proposed replacement gasoline service station and convenience store—one from the rear setback requirement for the new building construction in the rear setback outside the existing building's footprint, one for the new canopy's intrusion into the front setback and one from the front yard coverage requirement.

While the standards to be applied to the variance application above are clear, 24 V.S.A. § 4468(a) (2003), facts are in dispute as to whether Appellant's application for a variance from setbacks requirements can satisfy those standards. Moreover, an application was never presented to the DRB below regarding a variance from the front yard coverage requirements. Therefore, we must remand part of the appeal in Docket No. 152-7-02 Vtec for Appellant to submit to the DRB an application for a variance from the front yard coverage requirements.

**II. Docket Nos. 153-7-02 Vtec and 6-1-03 Vtec: Appellant's Conditional Use and Site Plan Applications**

Appellant originally applied for conditional use and site plan approval for replacing the existing convenience store and canopy over the gasoline pump islands in the fall of 2001. After an initial denial by the DRB and this Court's remand for the DRB to consider Appellant's site plan under Regulations § 26, relating to nonconforming uses and noncomplying structures, the DRB again denied conditional use and site plan approval.

At that time, service stations were permitted uses and convenience stores were conditional uses in the C1 District. Regulations §§ 12.106, 12.213. "Service stations" are defined by the applicable Regulations as, "Any building, land area, or other premises, or portion thereof, used for the retail dispensing or sales of vehicular fuels, and may include the servicing and repair of automobiles." Id. § 28.147. "Convenience store" is also defined by the applicable Regulations as, "A retail establishment, typically less than 4,000 square feet, offering for sale prepackaged food products, household items, newspapers and magazines, and may include sandwiches and other freshly prepared foods for off-site consumption." Id. § 28.108.

As the City correctly points out, the Regulations limit principal uses to one per lot. Id. § 26.651. Fortunately for Appellant however, the Regulations provide that the

DRB may approve two uses, even if one use is a conditional use, so long as the standards in § 26.651(a)(i) and (a)(ii) are satisfied. These provisions require that the two uses be compatible in their normal manner of operation, including hours of use, types of traffic generated, and lack of objectionable noise, odor, or dust, as well as requiring that both uses share common facilities, such as parking and outdoor storage areas.

We find that the material facts, even when viewed in a light most favorable to the City, evidence that Appellant's combined convenience store (which is a conditional use) and gasoline service station (which is a permitted use) to be sufficiently compatible so as to satisfy § 26.651 (a)(i) and (a)(ii), as they generate similar traffic, have compatible hours of operation, and share common facilities effectively. Thus, Appellant's two uses may be allowed, provided the convenience store can satisfy the requirements for approval of a conditional use. Id. § 26.05.

Appellant argues in its cross-motion for summary judgment that because the City recently amended its Zoning Regulations to allow convenience stores as a permitted use in the C1 District, Appellant should not have to undergo conditional use review. Appellant's position ignores the venerable rule mentioned above that we are to apply the regulations in effect when a proper application is filed. Smith v. Winhall Planning Comm'n, 140 Vt. 178, 181-82 (1981). Appellant's suggestion implies that an applicant can choose to have its proposed development reviewed under differing zoning provisions, depending upon which regulations label which component of its development as permitted. We are not aware of any authority for such a proposition, and decline to follow it here. Thus, regardless of whether subsequent amendments to a zoning ordinance change a particular use's classification from a conditional use to a permitted use, we must still apply the City's August 28, 2001 Regulations to Appellant's

pending application, as those Regulations were in effect when Appellant applied to improve its gasoline station and convenience store.[4]

The existing convenience store, gasoline pumps and canopy are noncomplying structures because they do not satisfy the Regulations front and rear setback requirements.[5] Under the law in effect when Appellant applied for site plan review, noncomplying structures were defined as nonconforming uses. 24 V.S.A. § 4408 (2003); Miserocchi, 170 Vt. at 323; see also In re Appeal of Wesco, Inc., 2006 VT 52, ¶ 24. As such, Appellant's replacement of the existing convenience store may only be authorized by Regulations § 26.

Before examining the plain language of § 26, we note that there is a strong preference for phasing out nonconforming uses because they are inconsistent with the purposes of zoning. See, e.g., Hinsdale v. Vill. of Essex Junction, 153 Vt. 618, 626 (1990) ("Nonconforming uses are inconsistent with the purpose of zoning and are tolerated only because they are antecedent to the applicable zoning provisions. A goal of zoning must be to phase out such uses."). The replacement of nonconforming uses may only be conducted if allowed by the applicable zoning regulations. 24 V.S.A. § 4408 (2003).

Examining the plain language of Regulations § 26, no provision authorizes the replacement of a nonconforming use with another nonconforming use.[6] Similarly, no provision in § 26 allows for the replacement of a noncomplying structure, unless the need for the replacement is due to damage or destruction "by fire, collapse, explosion or similar cause . . . ." Regulations § 26.005. There is no evidence in the record before us

---

[4] Appellant could resolve this quandry by withdrawing its pending application and resubmitting a new application under the new Regulations. We presume that Appellant has considered this option and rejected it for strategic reasons.

[5] Although Appellant obtained a variance in 1984 from the rear setback requirement to place the convenience store nine feet from the rear (westerly) lot line, the convenience store was actually constructed one foot closer to the rear lot line than authorized by the variance. Thus, it is a noncomplying structure.

[6] Without obtaining the variances required by Part I above, Appellant's proposed convenience store is also a nonconforming use because it does not comply with the C1 District's rear setback requirement.

that such damage or destruction has occurred here. We therefore conclude that Appellant is prohibited from replacing its nonconforming convenience store and the associated canopy with new structures, since the only authority in the Regulations to do so is not applicable here. Regulations § 26.005

Appellant suggests an alternative characterization of its improvements—that its proposed improvements be viewed as enlargements or extensions of pre-existing structures. It stretches the imagination to characterize Appellant's proposed improvements as anything other than outright replacements, since Appellant proposes removing the entire existing building and canopy and replacing them with new structures. Thus, we decline to adopt Appellant's characterization of its replacement of the convenience store and canopy as an addition or expansion. But even if we were to characterize Appellant's proposed improvements as enlargements or extensions, nonconforming uses may not be extended nor enlarged. Zoning Regulations § 26.003. Changes in nonconforming uses are also prohibited. Id. § 26.004. Thus, Appellant's alternate characterization of its proposed improvements does not lead us to the conclusion that the applicable Regulations allow for the proposed improvements.

Because Appellant proposes an unlawful replacement of a nonconforming use with another nonconforming use, site plan approval must be denied until Appellant receives the necessary variances from the applicable dimensional requirements mentioned in Part I above. Once all of Appellant's variance applications are granted, site plan review can be conducted under Regulations § 26.10. If such variance requests remain unauthorized, we cannot envision how Appellant's site plan application could be granted under the Regulations, even as now amended. In either instance, summary judgment in favor of the Town is appropriate at this time in both of these dockets (i.e.: Docket No. 153-7-02 Vtec and No. 6-1-03 Vtec).

17

**III. Docket No. 207-10-05: Vtec Appellant's PUD Application**

Lastly, we are presented with an appeal of the DRB's decision to uphold the Administrative Officer's refusal to accept Appellant's application for preliminary and final plat review so that Appellant can develop its parcel as a planned unit development (PUD). Appellant has moved for summary judgment, arguing that its application for preliminary and final plat review should be deemed approved because the Administrative Officer failed to issue a decision or refer the application to the DRB within thirty days as required by 24 V.S.A. § 4448(d) (2005). The City argues in its cross-motion for summary judgment that Appellant's preliminary and final plat review applications were barred by the doctrine of res judicata and constitute requests for impermissible advisory opinions.

As noted above, when analyzing each party's motion, any facts that are material to our present analysis of the parties' dispute are viewed in a light most favorable to the non-moving party. Toys, Inc. v. F.M. Burlington Co., 155 Vt. 44, 48 (1990).

Beginning in April 2005, Appellant began submitting materials in support of its application for preliminary and final plat approval to the DRB. On July 1, 2005, Appellant submitted all remaining materials required for such application, and the City considered the application complete. On July 8, 2005, the Administrative Officer returned the application to Appellant, noting that the application constituted a request for an advisory opinion that the DRB had no legal authority to render.

Appellant argues that its application should be deemed approved because the zoning Administrative Officer failed to act on the application for a permit within thirty days. Essentially, Appellant argues that the provisions of 24 V.S.A. § 4448(d) require the Administrative Officer to "issu[e] a decision or [make] a referral to the appropriate municipal panel," id., which Appellant alleges did not occur.

Our Supreme Court has "cautioned against using the deemed approval remedy beyond its purpose to remedy indecision and protracted deliberations." In re Fish, 150 Vt. 462, 464 (1988); see also Hinsdale v. Village of Essex Junction, 153 Vt. 618, 623-24 (1990). Because improper application of the deemed approval remedy can operate to grant permits wholly at odds with the zoning ordinance, we strictly construe the remedy to apply only when it clearly implements the statutory purpose. In re Appeal of Newton Enters., 167 Vt. 459, 465 (1998); see also In re Appeal of McEwing Servs., LLC, 2004 VT 53, ¶ 21.

This is not an instance where the Administrative Officer was indecisive. In fact, just a week after the Administrative Officer determined, however incorrectly, that the application was improper and could not be referred to the DRB, he announced his decision in writing and returned the application to Appellant. Thus, the Administrative Officer did not "fail to act with regard to a complete application for a permit within 30 days," 24 V.S.A. § 4448(d), as he promptly issued his written determination and returned the application to Appellant. The remedy of deemed approval is therefore not appropriate here.

In its cross-motion for summary judgment, the City argues that the doctrine of res judicata bars Appellant's PUD application from being considered because Appellant had already submitted the variance, conditional use and site plan review applications addressed above. The City relies on In re Application of Carrier, 155 Vt. 152, 158 (1990), for the proposition that a second application for development of the same property cannot be reviewed "'after a previous application has been denied . . . .'" Id., quoting Silsby v. Allen's Blueberry Freezer, Inc., 501 A.2d 1290, 1295 (Me. 1985). However, the City fails to emphasize the remainder of the quoted sentence in Carrier; the subsequent phrase makes clear that a second application for development of the same property may be allowed if "'a substantial change of conditions ha[s] occurred or other considerations

materially affecting the merits' of the request have intervened between the first and second application." Id., again quoting Silsby at 1295 (other references omitted).

Here, Appellant's application for PUD approval was applied for after such a change in conditions, as the applicable development regulations have changed since Appellant's 2002 applications. Appeal of Wesco, Inc., Docket No. 39-3-03 Vtec, slip op. at 3–4 (Vt. Envtl. Ct., Nov. 29, 2004) (stating that a change in circumstances may include a "material change in the applicable law or regulation.") Moreover, this is not an impermissible successive application, as the 2005 application is materially different in content from the 2002 application. The two applications presented by Appellant were submitted under different provisions of the Regulations—the 2002 application was for the development of a permitted and conditional use and the 2005 application is for approval of a planned unit development under completely different standards. By the City's own admission, both applications "propose completely different development scenarios for the Property." City's Mot. for Summ. J., at 6. Thus, the applications are not only different in content, but the City's amendment of their Zoning Regulations amounts to a substantial change in conditions barring application of the doctrine of res judicata.

The City also argues that Appellant's 2005 PUD application is a request for an impermissible advisory opinion. The City relies on our Supreme Court's opinion in Appeal of Bennington School, Inc., 2004 VT 6, to argue that Appellant's 2005 PUD application constituted a request for an advisory opinion, which the Administrative Officer and DRB cannot render. The situation at bar is quite different from that presented in Bennington School. There, the Supreme Court refused to rule on a hypothetical alternative development proposal that was presented to the Environmental Court on appeal but was never presented to the zoning board of adjustment in the first instance.

In contrast here, the City was presented with an application but chose not to rule on it. Appellant then appealed. We can not rule on the merits of Appellant's PUD application, since we are jurisdictionally prohibited from ruling on zoning applications that have not been considered by the appropriate municipal panel. See <u>Simendinger</u>, 171 at 651, and <u>Torres</u>, 154 at 235. But we are jurisdictionally authorized to render determinations on matters properly appealed from the municipal panels. The DRB determined that Appellant's application constituted an improper request for an advisory opinion. We see no foundation for such a legal determination and therefore reverse.

We are aware of no statutory or zoning provision that prevents Appellant from going forward with the proposed PUD if it is eventually approved by the DRB, or this Court on appeal. As we stated in our September 12, 2005 Entry Order, "The marketplace will often dictate whether development will actually occur, and the marketplace sometimes dictates that the property owner seek permission to develop their property in an alternate manner." <u>Appeal of Wesco, Inc.</u>, Docket No. 152-7-02 Vtec; 153-7-02 Vtec; and 6-1-03 Vtec, slip op. at 3 (Vt. Envtl. Ct., Sept. 12, 2005). Moreover, aside from successive applications that are similar in content, there is no prohibition on the submission of more than one development proposal for the same property. Thus, as we stated in a different case involving the Appellant here, "Appellant is entitled to have the DRB fully consider its proposal <u>or proposals</u> on their merits, and to appeal the merits of any denial, not merely whether [the application] is or is not an impermissible successive application." <u>Appeal of Wesco, Inc.</u>, Docket No. 39-3-03 Vtec, slip op. at 4 (Vt. Envtl. Ct., Nov. 29, 2004) (emphasis added).

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellant's cross-motion for summary judgment in Docket No. 152-7-02 Vtec is **DENIED** in part and the City's cross-motion for summary judgment is **GRANTED** in

part, as Appellant needs to obtain a variance from the front and rear setback requirements, as well as a variance from the front yard coverage requirements. Appellant's variance application is hereby **REMANDED** for the DRB to consider in the first instance whether a variance should be allowed from the 30% maximum front yard coverage requirement. The Court is prepared to schedule a trial on Appellant's appealed application for a variance from the "setbacks" on the parcel, particularly from the rear setback requirement for the approximately 10′ x 8.75′ area on southerly side of the new structure and for the approximately 9.38′ x 10′ area on the northerly side of the new structure.

Appellant's cross-motion for summary judgment in Docket No. 153-7-02 Vtec and 6-1-03 Vtec is also **DENIED** and the City's cross-motion for summary judgment is **GRANTED**, as Appellant's present use is nonconforming and cannot be replaced under Regulations § 26. Even when the facts are viewed in a light most favorable to it, Appellant is unable to show that it has in hand all three variances required for the Court to possibly render positive findings in its review of Appellant's conditional use application. The appeals in these two dockets must therefore be **DISMISSED** at this time.

Appellant's cross-motion for summary judgment in Docket No. 207-10-05 Vtec is also **DENIED**, as is the City's cross-motion for summary judgment, because the remedy of deemed approval is not appropriate, because Appellant's 2005 PUD application was not a request for an advisory opinion, and because the doctrine of <u>res judicata</u> does not prevent Appellant from receiving a decision on the merits of its PUD application. Appellant's complete application for preliminary and final plat approval is herby **REMANDED** to the DRB with this Court's directive that the DRB consider the merits of Appellant's proposed PUD in conformance with this Decision.

The Court will delay issuing the appropriate judgment orders in Docket Nos. 153-7-02 Vtec, 6-1-03 Vtec and 207-10-05 Vtec, and the scheduling of a merits hearing in the two retained variance requests in Docket No. 152-7-02 Vtec until **Monday, August 7, 2006,** so that the parties may suggest the schedule for such proceedings. The parties are directed to confer and then submit their procedural suggestions (whether they be joint or not), in regards to whether the Court should stay or dismiss the remaining proceedings, without prejudice, pending the resolution of the variance and PUD applications remanded to the DRB in accordance with this Decision.

Done at Berlin, Vermont, this 29th day of June, 2006.

_____
Thomas S. Durkin, Environmental Judge